# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-IA-00849-SCT

*DOUGLAS LONG, EDWARD LONG, RICHARD LONG, AND EARL LONG*

*v.*

*LORI McKINNEY ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES OF HUEY P. LONG, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/19/2002 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | WILLIAM B. WEATHERLY |
| ATTORNEYS FOR APPELLEE: | MARIANO JAVIER BARVIE' |
| | A. NORRIS HOPKINS, JR. |
| | ALBEN N. HOPKINS |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 12/02/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.    In this wrongful death case, we are called upon to address issues which ought to have been settled long ago.  Two law firms representing different wrongful death heirs filed separate wrongful death suits in the same circuit court.  The attorneys and their respective clients are now embroiled in a battle over consolidation, joinder, and "control" of the litigation. No area of the law has historically provided more muddled, misquoted and misunderstood procedural rules, than civil claims for wrongful death.  The blame for the perennial scrap over the rules can be traced to at least two sources.

¶2.    First, although the issue has been debated, the American judiciary – federal and state – has failed to squarely address the question of whether substantive claims for wrongful death originated in the common law, rendering them subject to substantial judicial discretion; or are creatures of statute, requiring strict, statutory construction.

¶3.    Secondly, it appears that in the waning years of the Nineteenth Century, our own wrongful death statute (the "Statute") took a wrong turn into procedural territory where it had no license to travel.   When one branch of government (well-intentioned though it may be) crosses the line into the purview of another, the balance of powers necessary for efficient and effective government is upset.   So it was with the Statute.   As a result, this Court has, for over a century, attempted to provide procedural guidance mislabeled as statutory interpretation; much like attempting to place a square peg into a round hole.   Consequently, little progress has been made in settling many troubling issues related to wrongful death litigation. The same issues and problems continually appear, and have been addressed on an ad hoc basis, leaving little in the way of dependable precedent.

¶4.    Today, we are provided an opportunity to address and clarify several of these problems, and to provide guidance for these issues to the bar and judiciary.

¶5.    In reaching our decision today, we have carefully reviewed the history of the wrongful death cause of action and the path which led to the enactment of our first wrongful death statute in 1857.  A brief overview of that history is provided herewith as Appendix A.

¶6.    Additionally, because the linchpin of our decision in this case is the Mississippi Constitution, we also provide in Appendix B a brief analysis of its history and provisions, as they relate to the case before us.

¶7.     The case before us should be, procedurally at least, an uncomplicated case. However, previous attempts to interpret the procedural provisions of our Statute have complicated wrongful death litigation, and have provided our trial judges and trial bar with unnecessary difficulty.     Accordingly, we must now meet our constitutional responsibility by scrutinizing the Statute for those matters which are judicial (including procedural provisions),[1] and by establishing the procedure to be followed in wrongful death litigation, those provisions notwithstanding.

¶8.     This Court is loathe to declare unconstitutional any statutory provision enacted by the legislature. To do so requires a careful and diligent review, and a conclusion that no constitutional alternative exists.     In promulgating the Mississippi Rules of Civil Procedure, this Court held that – in the event of a conflict between procedural statutes and the rules – the "rules shall control."     *See* Supreme Court order entered May 26, 1981, published in Mississippi Rules of Civil Procedure.  In ***Newell v. State***, 308 So. 2d 71, 76 (Miss. 1975), this Court characterized procedural statutes as "legislative suggestions," to be followed "unless determined to be an impediment to justice or an impingement upon the constitution."     We are obligated to walk that same path in deciding the matters before us today.

¶9.     Accordingly, because we find provisions of the Statute which are not in accord with this opinion to be "an impingement upon the constitution," we hold that, where provisions of this opinion conflict with the Statute, the provisions herein shall control.     In doing so, it is our

---

[1]Interestingly, the most recent amendment to the Statute includes the following commentary: "SECTION 5. . . . Procedural provisions of this act including subsections (1)(a, (b), (c) and (d) of Section 2 [§ 11-1-65] shall apply to all pending actions in which judgment has not been entered on the effective date of the act and all actions filed on or after the effective date of the act. . . ."

purpose to not only fulfill our constitutional responsibility, but also, to improve our judicial and legal systems so that cases and controversies may more efficiently and fairly move through the courts, providing proper resolution to the litigants.

¶10.    It is against this background that we now proceed to resolve the case sub judice.  We begin with a review of the factual background.

## FACTUAL BACKGROUND

¶11.    On October 5, 2002, while hospitalized for heart by-pass surgery, Huey P. Long suffered a premature death.   His will left everything to his daughter, Lori McKinney, and "specifically excluded all of [his] other children and stepchildren" from his will "because each of them has no physical or mental conditions requiring participation in [his] estate."

¶12.    Twelve days later, Lori signed a contingency fee contract of employment with Hopkins, Barvie & Hopkins, P.L.L.C., (the "Hopkins Firm"), engaging that law firm to represent her and file suit on her behalf.  Specifically, the contract provides, as follows:

> In consideration of the legal services to be rendered by the law firm of HOPKINS, BARVIE' & HOPKINS, P.L.L.C. . . . for any claims that I, the undersigned client, . . . may have against the parties responsible for the injuries and/or damages sustained by client on the ___ day of _____, 20_____, I the undersigned client, do hereby employ HOPKINS, BARVIE' & HOPKINS, P.L.L.C., to represent and institute proceedings for damages in my behalf against Memorial Hospital; Dr's for the aforesaid injuries and/or damages.

The contract does not mention Huey P. Long, his estate, his wrongful death beneficiaries, or his death.[2]   On that same day, the Hopkins Firm filed a complaint in the Circuit Court of the

---

[2]The Hopkins Firm doubtless relied on the wording of the Statute, discussed infra, which appears to approve of a single wrongful death beneficiary instigating litigation on behalf of all beneficiaries, and on behalf of the personal representative, without naming them as parties, and with no notice to the personal representative or other beneficiaries.

First Judicial District of Harrison County, identifying the plaintiffs as "Lori, individually, and on behalf of all wrongful death beneficiaries of Huey P. Long." The estate of Huey P. Long is not named as a plaintiff, nor is it mentioned in the complaint.

¶13. The next day, without knowledge of Lori's lawsuit, Douglas Long, Edward P. Long and Richard Long, individually and on behalf of all the wrongful death beneficiaries of Huey P. Long, filed a complaint in the Circuit Court of Harrison County, First Judicial District. Their counsel, William Weatherly, Esq. ("Weatherly"), had obtained contingency fee contracts from the three on October 15th, 16th, and 18th, respectively. After later obtaining a contingency fee contract from the fourth brother, Earl Long, Weatherly amended the Complaint to add him as a plaintiff. Douglas, Edward, Richard and Earl were all children of the deceased, Huey P. Long, and will be referred to herein as the "Longs."

¶14. On November 13, realizing that Lori had filed suit one day prior to his clients, Weatherly filed a motion requesting the circuit court to consolidate the two suits and to order that attorney fees be paid according to the attorneys' respective contracts.

¶15. A week later, Lori presented a PETITION FOR APPROVAL OF CONTRACT FOR LEGAL SERVICES to the chancery court, seeking approval of her attorney fee contract with the Hopkins firm.[3] The chancery court entered an order approving the employment contract, and characterizing it as a

---

[3]According to Weatherly, neither he nor his clients were provided notice of the chancery court proceedings. It appears the Hopkins Firm did not represent Lori in the chancery proceedings, since the petition filed in chancery was signed by attorney David Raines as counsel for Lori, and the Hopkins Firm is not indicated as counsel of record. It is, therefore, entirely possible that when Raines presented the petition to the chancery court, he was unaware of the suit filed by Weatherly on behalf of the Longs.

contract entered into between your (sic) petitioner herein and the law firm of Hopkins, Barvie' & Hopkins to represent the Petitioner **on behalf of the Estate** of Huey P. Long. . . .

The order goes further to state that

Petitioner verified to this Honorable Court that she feels that it is in the best interest of the estate that said firm represent the estate and the Court further finds that it is in the best interest of the estate that the said firm represent the estate in those said proceedings for medical malpractice for the estate.

Accordingly, the Chancellor ordered, as follows:

ORDERED AND ADJUDGED that your (sic) Petitioner be and she is hereby authorized to enter into [a] legal contract and employ the law firm of Hopkins, Barvie' and Hopkins, P.L.L.C. to file suit, on behalf of the Estate of Huey P. Long, for a medical malpractice claim and it is further ordered that the firm of Hopkins, Barvie' & Hopkins, P.L.L.C. upon execution of said contract shall proceed to file or enter in or intervene in said legal proceedings on behalf of the estate and the contingency contract of the firm of Hopkins, Barvie' & Hopkins, P.L.L.C., aforesaid for 40% is approved and granted from the estate.

¶16.    Thus, the chancery court order authorized the Hopkins firm to represent Lori in her capacity as administratrix of the estate of Huey P. Long.  The order further provided that the 40% contingency fee was "approved and granted from the estate."

¶17.    On December 2, the Longs' motion to consolidate came before the circuit court for hearing. During the hearing, the circuit judge asked whether an estate had been opened. Counsel for Lori replied that Raines represented the estate, and that there was an order in the judge's packet of information which provided that "the chancellor approved our law firm representing the estate and all wrongful death beneficiaries in that matter, also in the civil matter, and you've got a copy of that order."

¶18.    Because of previous interpretations of the Statute, we are satisfied that Lori's counsel believed this representation to be true when made.  However, it was technically inaccurate.  The

-6-

chancery court had not approved the Hopkins Firm's representation of "all wrongful death beneficiaries." The trial judge responded that, as he understood the law, "neither party has a right" to pursue the litigation without chancery authorization.[4] Lori's counsel then stated to the trial court that "the wrongful death statute says that the personal representative, which [was] Lori McKinney, [could retain his firm and file the litigation] on behalf of all of them on their interests." He further stated: "Our case [was] filed first. There is a line of cases which support the first filing [as] being the case that remains." He then repeated the representation to the trial court that the chancery court had approved the attorney fee contract and Lori's "representation of her and all of the wrongful death beneficiaries."[5] Thereafter, the trial judge took the matter of consolidation under advisement, provided time for the parties to file briefs, and adjourned.

¶19. On December 19, the trial judge entered an order denying the Longs' motion to consolidate, citing what he termed "the long recognized rule of 'first to file an action has a right to prosecute it to its conclusion.'" The order further provided that, although the court was aware of "***Franklin v. Franklin*** [***ex rel. Phillips***, 858 So.2d 110 (Miss. 2003)]" it appeared to him that consolidation was "discretionary, and only if the parties agreed to the consolidation." The trial court's order further stated that "[t]he Wrongful Death Statute

---

[4]The trial court's understanding was not correct. There is no requirement of chancery court approval in order to pursue a wrongful death claim. This misunderstanding on the part of the trial judge, however, is common; and is another example of the difficulty that ensues when this Court fails to clearly set forth the procedure to be observed in litigation.

[5]Although this statement was technically not correct, Weatherly neither challenged nor questioned it before the trial court or in his briefing to this Court, leading us to conclude that everyone present believed the representation was accurate, and in accord with the Statute.

provides for any beneficiary to bring the action in behalf of all beneficiaries and the 'first to file' shall have control of the handling of the case."

¶20. Four days later, Weatherly filed a motion for reconsideration. He noticed a hearing for January 31, 2003. Although he claims he provided notice[6] of the hearing, the Hopkins Firm denies receiving the notice. In any case, the hearing on the motion took place as scheduled, without the presence of counsel for Lori. Weatherly reminded the trial judge that he represented four of the statutory heirs, and argued that, if the cases were not going to be consolidated, he should at least be allowed to participate as counsel for the Longs, in the suit filed by Lori. The trial court stated:

> Well, the rules, as I understand them, provide that – and the statute provides that any heir under – or any designated individual under the wrongful death statute may enter into a lawsuit against an alleged defendant for and on behalf of all parties. However, that does not prohibit one of the parties from entering into the lawsuit on their own.

¶21. The trial judge, clearly believing (at that point) that the Longs were entitled to participate in the suit through counsel of their choice, attempted to fashion some workable procedure for expert costs, depositions and other participation. Apparently becoming frustrated, however, he stated, "I don't think I can outline rules for you-all to go by in pursuing this case." The judge then admonished Weatherly to talk with counsel opposite and "work out some degree of cooperation," after which he reaffirmed that Weatherly would be allowed to remain in the case as attorney of record for the Longs.

---

[6]Weatherly provided as an exhibit a copy of the notice, together with a facsimile receipt of delivery.

¶22.    An order reflecting the trial court's decision was entered on February 6, 2003. The order added the provision that the Hopkins Firm would "control the litigation," but was silent as to division of attorney fees. The same day the order was signed, a motion to reconsider was filed by "Lori McKinney, Individually and on Behalf of all wrongful death beneficiaries of Huey P. Long, Deceased,[7] stating that the Hopkins Firm had no notice of the December 31 hearing, and requesting an opportunity to be heard.

¶23.    On March 21, 2003, the trial court conducted a hearing on Lori's motion to reconsider. Lori's counsel argued that the "first to file" rule still applied, and that "the chancery court has recognized [the Hopkins Firm's] contract and the right for Ms. McKinney to proceed with this case." He then admonished the trial judge to "[r]emember that, in the *Franklin* case, the Snow firm (his counterpart in *Franklin*) is the one that had the chancery court approval.

¶24.    On that same day, Lori signed a new employment contract with the Hopkins Firm entitled AMENDMENT TO EMPLOYMENT CONTRACT AND CONTINGENCY FEE AGREEMENT[8] which, according to the record before us, was never presented to or approved by the chancery court. Furthermore, there is no evidence in the record before us that the chancery court ever recognized Lori's right to proceed with the active litigation before the

---

[7]As another example of the difficulty visited upon the judiciary and legal profession by this Court's prior reluctance to provide clear procedural rules, we now have Lori, "on behalf of" the Longs, filing a motion against the Longs, in an attempt to exclude them, against their will, from participation in the litigation wherein she and the Hopkins Firm purport to represent them. This is also another example of a potential conflict of interest (discussed *infra*) which can occur under current interpretation (by some) of the statute.

[8]This amended contract is between the Hopkins Firm and Lori L. McKinney, individually and on behalf of all wrongful death beneficiaries of Huey P. Long, Deceased, and as Executrix of the Estate of Huey P. Long, Deceased.

circuit court. The chancery court did approve Lori filing suit on behalf of the estate. However, in the case before us, which is the same "case" that was before the circuit judge, Lori filed suit "individually and on behalf of all wrongful death beneficiaries of Huey P. Long, Deceased." The estate is not named as a party to the complaint.

¶25. The trial court agreed with the Hopkins Firm, reversed his February 6 order, and "reinstated" his December 19 order. In doing so, the court provided no explanation for the reversal, other than (1) his receipt of the amended attorney fee contract "of Lori McKinney with [the Hopkins Firm]; and (2) the Chancery Court Order of November 26, 2002, approving the Contract of [the Hopkins Firm] and recognizing Lori McKinney as the Executrix of the Estate of Huey P. Long." The trial court offered nothing to indicate why either the amended contract (which was never approved by the chancery court) or the chancery court's November 26 order (which approved the prior contract), were relevant. We note that, with the exception of the amended contract, the trial court had been provided all the other materials prior to entry of his first order in December, 2002.

¶26. More curious to us is the fact that the trial court's March 24 order did not address Weatherly's request to participate in Lori's suit on behalf of the Longs, but simply reinstated the prior refusal to consolidate. Thus, the parties found themselves right back where they started. This confusion led to the Long's request for certification for interlocutory appeal, which the trial court denied. The Longs then filed a petition for interlocutory appeal which we granted, and which is the matter now before us. *See* M.R.A.P.5

**ANALYSIS**

-10-

¶27.    To begin our analysis, we set forth the portion of the current Statute necessary to decide the case before us:

> Whenever the death of any person . . . shall be caused by any real, wrongful or negligent act or omission . . . as would, if death had not ensued, have entitled the party injured or damaged thereby to maintain an action and recover damages in respect thereof, . . . and such deceased person shall have left . . . children . . . , the person or corporation, or both that would have been liable if death had not ensued, and the representatives of such person shall be liable for damages, notwithstanding the death, . . . . The action for such damages may be brought in the name of the personal representative of the deceased person . . . for the benefit of all persons entitled under the law to recover, or by widow for the death of her husband, or by the husband for the death of the wife, or by the parent for the death of a child or unborn quick child, or in the name of a child, or in the name of a child for the death of a parent, or by a brother for the death of a sister, or by a sister for the death of a brother, or by a sister for the death of a sister, or a brother for the death of a brother, or all parties interested may join in the suit, and there shall be but one (1) suit for the same death which shall ensue for the benefit of all parties concerned, but the determination of such suit shall not bar another action unless it be decided on its merits. Except as otherwise provided in Section 11-1-69, in such action the party or parties suing shall recover such damages allowable by law as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit.
>
> * * *
>
> [D]amages shall be distributed as follows:
>
> * * *
>
> [D]amages shall be equally distributed to the children; . . . .

Miss. Code Ann. § 11-7-13 (Supp. 2004) (as amended by 2004 Miss. Laws ch. 515 (H.B. 352)).

¶28.    Under this statute, and its predecessor, there are three alternatives for bringing a wrongful death suit: (1) by the personal representative on behalf of the estate and all other persons entitled to recover; (2) by one of the wrongful death beneficiaries on behalf of all persons entitled to recover; or (3) by "all interested parties. . . ."

¶29. These statutory provisions have been interpreted to allow a suit by the personal representative, or by the wrongful death heirs, but not by both. ***Jones v. Steiner***, 481 F.2d 392 (5th Cir. 1973). Thus, the statute has generally been interpreted to provide exclusive authority to a wrongful death beneficiary who files suit to pursue the claims of the estate. ***Hornburger v. Baird***, 508 F. Supp. 84 (N.D. Miss. 1980).

¶30. In the case before us, we have an excellent trial judge with many years experience on the trial bench, and excellent lawyers with many years of litigation experience, who believe that, under the Statute, Lori may prosecute the case on behalf of all persons entitled to recover, with or without their consent; and that, absent her agreement, other claimants are prohibited from joining in to participate in the litigation with counsel of their choice.

¶31. Given this misconception which apparently is pervasive among members of the bar and bench, we are compelled to briefly address the potential conflicts of interest inherent in such a restricted view.

*Conflicts of interest.*

¶32. In order to fully appreciate the potential for conflicts of interest in wrongful death litigation, it is necessary to first recognize that, in wrongful death litigation, there are several kinds of damages which may be pursued, and these damages are not due to the same claimants.

¶33. For instance, the estate is entitled to recover funeral costs and final medical expenses. The beneficiaries are entitled to recover for their respective claims of loss of society and companionship. The wrongful death beneficiaries are entitled to recover the present net cash value of the decedent's continued existence.

¶34. The possible claimants are (1) the heirs (under the will or pursuant to the intestate succession statutes), (2) the estate, and (3) the statutory wrongful death beneficiaries. The Statute speaks in terms of a litigant bringing the suit "for the benefit of all persons entitled under law to recover . . ." and "for the benefit of all parties concerned. . . ." Thus, bringing suit in such a representative capacity renders the named plaintiff a fiduciary to all he or she proposes to represent, much the same as in litigation instituted by the executor or executrix of an estate.[9] Those being represented must trust the named plaintiff to properly prosecute the litigation, enter into fair settlement negotiations, and handle all funds recovered as trust funds for the benefit of those entitled to them. The position of the attorney representing the named plaintiff is no different. All heirs and beneficiaries, including the estate, are bound up in the trust relationship, and the attorney owes each a full measure of loyalty, trust and disclosure.

¶35. In the simple case, where for instance there is but one wrongful death beneficiary who is also the sole heir to the estate of the deceased, the attorney has little potential for conflict. Where there are two or more beneficiaries, the potential for conflict grows. And where there are several wrongful death beneficiaries who are not the same as the heirs of the estate,[10] the potential conflicts should be obvious. A disinherited heir who is also a wrongful death beneficiary will have no interest in pursuing claims for the estate. The representative of the estate will have no interest in pursuing recovery for the disinherited heir. Each beneficiary

---

[9]No one would question the existence in such litigation of a fiduciary relationship between a personal representative serving as plaintiff, and the heirs.

[10]The heirs at law under our law of descent and distribution are the same as the wrongful death beneficiaries. However, in the event the decedent leaves a will, one or more heirs at law may be disinherited in the will, and new heirs may be named by the testator; whereas the wrongful death beneficiaries may not be disinherited.

must consider whether to bring their own individual claim for loss of society and companionship. A spouse may have a claim for loss of consortium. Where there is a limited fund for recovery, the potential for conflicts of interest, real and apparent, are enormous.

¶36. One example of the difficulty which can result is illustrated in *Pannell v. Guess*, 671 So. 2d 1310 (Miss. 1996), where David Pannell, one of the wrongful death beneficiaries, signed a contingency fee contract with attorney John Long to pursue a wrongful death claim. Long opened an estate, and then negotiated a $150,000 settlement of the wrongful death claim. The proceeds were placed into the registry of the chancery court, pending a determination of the wrongful death beneficiaries.

¶37. At the hearing, the chancellor found the mother, father, three half-sisters and a half-brother, to be the beneficiaries. All agreed to settle for $150,000, but David and Betty (the mother and father) claimed that the half-siblings should recover nothing or, alternatively, should receive less because of the parents superior claim for loss of companionship and society. This resulted in the half-siblings engaging separate counsel. Long argued that his contingency fee contract applied to all beneficiaries. *Id*. at 1312. The chancellor ordered payment of statutorily designated expenses, with the balance to be divided equally among the heirs. The chancellor also found that Long's contingency fee contract was not binding on anyone but David.

¶38. This Court affirmed the chancellor, except that a hearing was ordered to determine whether the mother and siblings derived a benefit from Long's efforts, requiring that they pay Long some compensation. The case was remanded for the chancellor to determine whether Long should be paid attorney fees by persons he opposed in the chancery court. *Id*. at 1315.

-14-

¶39.    In this Court's most recent pronouncement concerning these issues, the lawyer who won the race to the courthouse claimed he was entitled to recover all attorney fees. *Franklin v. Franklin ex rel. Phillips*, 858 So. 2d 110 (Miss. 2003). This Court held that another attorney who contributed substantial time and effort in bringing about a settlement should be compensated, and further held that no authority exists which prevents various claimants from engaging counsel of their choice.

¶40.    In the case before us, Lori is the sole beneficiary under Huey P. Long's will. Her brothers (the Longs) were disinherited. Thus, a potential and incentive for Lori to vigorously pursue the claims of the estate, and her individual claim for loss of society, is clearly present. Each dollar recovered for such claims will inure entirely to the benefit of Lori, while other dollars recovered must be divided among the wrongful death beneficiaries. The Hopkins Firm, according to its reasonable interpretation of the Statute and prior law, has been forced into the position of urging motions and making arguments in court which are contrary to the wishes of the Longs, whom both he and his client, Lori, represent, and whose interests they both have a fiduciary obligation to protect. In one argument presented to the trial court, Lori's counsel stated

> Your Honor, my position simply is this, that all parties were before the court. The statute clearly says that I file it the way I filed it. . . . I filed it just the way I'm suppose to do it. And I filed it just the way the cases I've cited to you say, and they're not reversed. And that is that I filed it first. I got my attorney's fees approved. I am representing all the parties as I have a right to do. . . .

¶41.    Under this interpretation of the statute and prior cases (which is certainly not an unreasonable interpretation), the law of Mississippi requires that there can be only one suit; that the attorney who represents the first heir to file "controls" the litigation, and represents

-15-

all heirs (whether they agree to such representation or not), and that the attorney is not only justified, but indeed compelled, by the Statute to oppose his "clients," should they attempt to join the litigation with counsel of their choice.

¶42. Additionally, under such interpretation, counsel would be fully justified in representing an heir who "controls" the litigation to the exclusion of participation of the estate. Thus, where counsel represents a disinherited heir who is also a wrongful death beneficiary, he or she would again be justified and compelled by the statute to represent a client with full power to prosecute and settle litigation on behalf of the estate, even though the client has no interest in the estate and, in fact, has interests which conflict with those of the estate.

¶43. The Longs, on the other hand, have no incentive to pursue any damages other than those for the wrongful death claim, evidenced by their failure to name the estate as a party, or seek any damages on its behalf. Every dollar awarded to the estate, or to Lori, individually, for loss of society and companionship, reduces the fund from which a recovery by the Longs may be paid. In addition to these conflicts in pecuniary interest, the Longs claim they do not wish to be represented by the Hopkins Firm.

¶44. Nevertheless, the Statute forces the claims to be litigated in the same suit, and current interpretation provides that the heir (or the personal representative) who wins the race to the courthouse will "control" the litigation (presumably to the exclusion of any "control" by other heirs and their respective attorneys). This procedural morass may be perfectly acceptable to those heirs who win the race, but the system may completely fail many of those who do not. And since their misfortune seems to have been sanctioned by law, they – and their counsel – have simply accepted it.

¶45. Thus, one might argue that these inherent, potential conflicts are irrelevant in the face of a statute which forces all claims to be litigated in one suit, and a pervasive interpretation of that statute which holds that the first heir to the courthouse "controls" the litigation to the exclusion of other heirs and their counsel. Indeed, we believe the credibility and veil of propriety provided by the statute is the only explanation for this anomaly in the legal practice which results in skilled, well-respected counsel embroiled in such conflicts.[11]

¶46. By our decision today and the procedure announced below, we intend to eliminate the inherent conflict of interest and simplify the decisions to be made by trial courts where more than one heir wishes to participate in the litigation to protect their individual interests. We also address the dilemma faced by counsel who have seemingly been forced into the uncomfortable position of representing a client with conflicts of interest.

¶47. The resolution of this case requires only that we address appropriate practice and procedure in wrongful death litigation. No substantive law is involved. Therefore, we now proceed to resolve the questions raised in the case sub judice.

**1. One Suit.**

¶48. It is apparent that the original "one suit" language was included in the 1886 amendment to the Statute in an attempt by Frank Critz to accomplish legislatively what he could not judicially. See Appendix A. Critz wanted to pursue the claims of both the estate and the wrongful death beneficiaries in the same suit. Regardless of Critz's motivation for the "one suit" language, his idea is not without some merit for our purposes today. However, the proper

---

[11]Texas has avoided this problem by providing that the same persons who may recover under their wrongful death statute may bring the suit. Tex. Code Ann. § 71.004.

basis and authority for requiring all litigants to proceed in one wrongful death suit in not found

in the statute, but rather in the principle of priority jurisdiction, and the Mississippi Rules of

Civil Procedure.[12]

*Priority Jurisdiction.*

¶49.    Writing for the Court in ***Harrison County Development Comm'n v. Daniels Real***

***Estate, Inc.,*** 880 So. 2d 272, 276 (Miss. 2004), Presiding Justice Cobb stated:

> This Court has established the general rule of priority jurisdiction, as follows:
> "It is fundamental that a plaintiff is not authorized simply to ignore a prior action
> and bring a second, independent action on the same state of facts while the
> original action is pending. Hence a second action based on the same cause will
> generally be abated where there is a prior action pending in a court of competent
> jurisdiction within the same state or jurisdictional territory, between the same
> parties, involving the same or substantially the same subject matter and cause of
> action, and in which prior action the rights of the parties may be determined and
> adjudged. ***Lee v. Lee***, 232 So.2d 370, 373 (Miss.1970) (emphasis added). In
> ***Huffman v. Griffin***, 337 So.2d 715, 719 (Miss.1976), which addressed the
> issue of priority jurisdiction between courts of concurrent jurisdiction, this
> Court held that "[t]he principle of priority jurisdiction is that where two suits
> between the same parties over the same controversy are brought in courts of
> concurrent jurisdiction, the court which first acquires jurisdiction retains
> jurisdiction over the whole controversy to the exclusion or abatement of the
> second suit ....(internal citations omitted.) *See also* ***Scruggs, Millette,***
> ***Bozeman & Dent, P.A. v. Merkel & Cocke, P.A.***, 804 So.2d 1000, 1006
> (Miss.2001). The principle of priority jurisdiction presupposes that the first
> court in which suit is filed is a court of competent jurisdiction.

¶50.    Similarly, writing for the Court in ***Hancock v. Farm Bureau Ins. Co.*** 403 So.2d 877,

878-79 (Miss. 1981), Presiding Justice Stokes V. Robertson, Jr., noted:

> In ***Huffman v. Griffin***, 337 So.2d 715 (Miss.1976), this Court said: "The
> principal [*sic*] of priority jurisdiction is that where two suits between the same

---

[12]Other states avoid the "one suit" language, and simply allow judicial precedent and the rules
of civil procedure to control the form of the suit and the parties who bring it. *See, e.g.,* Tenn. Code
Ann. § 20-5-106 ( West Supp. 2004 ).

parties over the same controversy are brought in courts of concurrent jurisdiction, the court which first acquires jurisdiction retains jurisdiction over the whole controversy to the exclusion or abatement of the second suit. (Citing *Lee v. Lee*, 232 So.2d 370, 373, (Miss.1970), and other authorities).

¶51.    We find that a logical extension of the principle of priority jurisdiction requires that all claims for the wrongful death of a person be litigated in the same suit and in the same court. In all claims which may be brought, the controversy (subject matter) is the same.   The parties will generally be the same, although there are (as here) exceptions where a statutory beneficiary is treated differently under a will.   Such occasional exceptions, however, do not merit abandonment of the judicial economy and other obvious advantages of requiring that all claims be brought in one suit.

¶52.    This leads us to the question of what courts are to do where (as here) a second suit is filed by an appropriate party without knowledge of the first.   Some of our cases addressing priority jurisdiction (such as *Lee v. Lee*) speak in terms of "abatement" of the second action. Others (such as *Hancock v. Farm Bureau Ins. Co.*,) speak in terms of "exclusion," that is to say, exclusive jurisdiction of the first court to take jurisdiction.   The seemingly insignificant difference can, under certain circumstances we need not discuss here, have the same effect as the seemingly insignificant pea under the princess's mattress.   Thus, we hold that the first court to properly take jurisdiction of a wrongful death action in our state courts shall, so long as that action is pending, have exclusive jurisdiction, and any other subsequently-filed action for the same death shall be of no effect.

*Mississippi Rules of Civil Procedure.*

¶53. Wrongful death cases hold no monopoly on the potential for multiple claimants ~~suits~~ over the same subject matter or controversy. Such cases may be divided into two categories; those which arise from a distinct, litigable event, and those which do not.

¶54. This Court has spoken recently regarding multiple litigants claiming over the same controversy, but whose claims do not arise from a distinct, litigable event. *See e.g*. ***Janssen Pharmaceutica, Inc. v. Bailey*** 878 So.2d 31, (Miss. 2004); ***Janssen Pharmaceutica, Inc. v. Scott***, 876 So.2d 306 (Miss. 2004). ***Janssen Pharmaceutica, Inc. v. Armond***, 866 So. 2d 1092 (Miss. 2004). The controversy in ***Armond***, identical to all plaintiffs, was over the safety of the prescription drug, Propulsid. However, the events giving rise to the litigation were quite different for each plaintiff, requiring this Court to hold that joinder of the claims was improper. Under Miss. R. Civ. P., Rule 20, the comment states that "[t]he phrase 'transaction or occurrence' requires that there be a *distinct litigable event* linking the parties." (emphasis added).

¶55. Wrongful death litigation often involves two or more claimants. There may exist numerous wrongful death beneficiaries. Additionally, the estate may make a claim for certain damages. However, the gravamen of all such claims is the requirement that the claimants prove that the death was caused by the same wrongful act. Thus, all claims in wrongful death litigation must, by definition, arise out of a distinct, litigable event.

¶56. Against that background, we now turn to Rule 19, of the Mississippi Rules of Civil Procedure, which states, inter alia:

> (a) *Persons to be joined if feasible*. A person who is subject to the jurisdiction of the court shall be joined as a party in the action if:

> (1) in his [or her] absence complete relief cannot be accorded among those already parties, or
>
> (2) he [or she] claims an interest relating to the subject of the action and is so situated that the disposition of the action in his [or her] absence may (i) as a practical matter impair or impede his [or her] ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his [or her] claimed interest.
>
> If he [or she] has not been so joined, the court shall order that he [or she] be made a party. If he [or she] should join as a plaintiff but refuses to do so, he [or she] may be made a defendant or, in a proper case, an involuntary plaintiff.

Miss. R. Civ. P. 19(a). The comment to Rule 19 states in pertinent part:

> Compulsory joinder is an exception to the general practice of giving the plaintiff the right to decide who shall be parties to a law suit; although a court must take cognizance of this traditional prerogative in exercising its discretion under Rule 19, plaintiff's choice will have to be compromised when significant countervailing considerations make the joinder of particular absentees desirable.

Miss. R. Civ. P. 19 cmt.

¶57.    We can think of no lawsuit brought before out judiciary more qualified for compulsory joinder provided under Rule 19, than a suit for wrongful death. We therefore hold that, in wrongful death litigation, all claims shall be joined in one suit. The obligations of the party bringing the suit, and counsel, with respect to other claimants will be discussed infra.

### 2. Consolidation and Joinder.

¶58.    Consolidation of suits presupposes that there are two suits to consolidate. Because we hold that wrongful death claims must be brought in a single suit, there cannot be two suits to consolidate. Where, as here, a second suit is filed, it is of no effect and should be dismissed, as discussed supra. The rights of all claimants are preserved in the original suit and are fully addressed by joinder. Each claimant, as a matter of right, may join in the litigation and

participate as fully as any other claimant.  The interests of claimants not joining in shall be represented by counsel for the claimant filing the suit.  See discussion of choice of attorneys and payment of attorney fees infra.

### 3. The Role of the Chancery Court.

¶59.    Perhaps no aspect of wrongful death litigation is more misunderstood and misapplied than the role of the chancery court.[13]   With respect to a wrongful death suit to be pursued in circuit court, chancery jurisdiction should be invoked for the following purposes:

*Estate.*

¶60.    In the event the litigants wish to pursue a claim on behalf of the estate of the deceased,[14] such estate must, of course, be opened and administered through the chancery court.  As is true in all estates administered through the chancery court, chancery approval is required for the appointment of the personal representative of the estate, whether executor, executrix, administrator or administratrix.

¶61.    There is no general requirement under law that the personal representative obtain chancery approval to pursue the claims of the estate in the litigation.  Nor is there a general requirement that counsel representing the personal representative and the estate in the litigation obtain prior chancery approval of such representation or the agreement for

---

[13]The misunderstanding can be partly attributed to the Uniform Chancery Court Rules, which address petitions for authority to compromise, and petitions for allowance of attorney fees, in wrongful death suits. U.C.C.R. 6.10, 6.12.  These rules apply only to wrongful death suits which require chancery jurisdiction. See discussion infra.

[14]We recognize that, because of the limited recovery available to the estate in many cases, litigants may choose, with advice of counsel, to proceed without including a claim on behalf of the personal representative or the estate.  As discussed infra, such decision should be made only after full disclosure to all who might benefit from the estate.

compensation of counsel. However, obtaining such prior approval is a widely accepted and wise practice.[15] Such prior approval will, in most instances, avoid difficulty when the chancellor is approached for an order approving the accountings and the final distribution of estate proceeds, where such payments include compensation to counsel.

¶62. Where a recovery is had by the estate in the litigation, the proceeds must be administered and distributed though the chancery court in the same manner as other assets of the estate, and counsel for the estate must be paid from estate proceeds or assets, upon approval of the chancery court in the same manner as other debts and obligations of the estate.


¶63. In the case before us, Lori, represented by David Raines, opened the estate of Huey P. Long, and obtained prior chancery approval of the Hopkins Firm's representation of the estate, including the contingency fee contract. Appropriately, the chancellor's approval of the Hopkins Firm was limited to representation of the estate and the payment of fees from estate proceeds. However, for reasons not apparent from the record before us, the estate was not named as a party in the litigation.

¶64. Lori appears only as "Lori McKinney, Individually and on behalf of all wrongful death beneficiaries of Huey P. Long, Deceased," and the Hopkins Firm appears in this litigation only as counsel for "Lori McKinney, Individually and on behalf of all wrongful death beneficiaries of Huey P. Long, Deceased." Thus, were this litigation to proceed to conclusion in its current form, and even assuming arguendo that Lori requested and recovered damages for the estate,

---

[15]This is especially true where counsel representing the estate in the wrongful death litigation has not agreed, and does not intend, to represent the estate generally.

the Hopkins Firm would have difficulty establishing its entitlement to attorney fees from the estate since, under its contingency fee contract with the estate which was approved by the chancellor, the Hopkins Firm is required to do that which it is not doing, that is, represent the estate in the litigation.

¶65. We wish to point out that this opinion is not intended – and should not be read – to imply wrongful, improper or incompetent acts on the part of the trial court, the parties or their counsel. But we do wish to be understood to point out that, where a skilled and experienced trial judge such as the trial judge herein, and competent and respected lawyers such as those in this case, can serve to render litigation in such convoluted and unexplainable circumstances as those before us, no further argument seems necessary to justify our actions and pronouncement today.

*Minors.*

¶66. Frequently, wrongful death litigation will involve a minor, either as an heir of the estate, a wrongful death beneficiary, or both. In such cases, the representation of the minor's interests, and any agreement for the payment of attorney fees from the minor's share of proceeds, must be approved by a chancellor, as in other cases.

*Determination of wrongful death beneficiaries.*

¶67. Section 11-7-13 provides that wrongful death litigation may be brought by the personal representative of the deceased or by any one or more of several statutory beneficiaries, for the benefit of all entitled to recover. Unless all persons entitled to recover join in the suit, those who do have a fiduciary obligation to those do not. Miss. Code Ann

-24-

§ 91-1-27 (Rev. 2004) provides for a chancery determination of the heirs at law of a decedent; that is, those who inherit in the absence of a will. Although our statutes mandate no specific procedure for the identification of wrongful death beneficiaries, a chancery court may make such determinations. Those bringing the action, together with their counsel, have a duty to identify the beneficiaries, and they should do so early in the proceedings.[16]

### 4. Choice of attorneys and payment of attorney fees.

¶68. Where, as here, one of the wrongful death beneficiaries proposes to engage counsel and file a wrongful death suit without participation of the personal representative of the decedent and all other beneficiaries, the beneficiary who files suit does so as the representative of all statutory beneficiaries and must, within a reasonable time following the filing of the complaint,[17] provide reasonable notice (i) to all other wrongful death beneficiaries; (ii) to the personal representative of the decedent if one has been appointed; and (iii) to each person who bears a relationship to the deceased specified in section 11-7-13.[18] Such notice should, at a minimum, include the identity of the plaintiffs and defendants, the nature of the claims against those defendants, the identity of counsel representing the plaintiffs, and a copy of the complaint.

---

[16]Recognizing that the lack of a specific procedural framework for determining wrongful death beneficiaries is a handicap for practitioners, this Court – in its continuing review of procedural rules – will address this need.

[17]In no event should such notice be sent later than thirty days following the filing of the complaint.

[18]Michigan requires similar notice to "persons who may be entitled to damages" in wrongful death cases. *See* Mich. Comp. Laws Ann. § 600.2922 (West Supp. 2004).

¶69.  In addition, full disclosure is required of any agreement or arrangement for the payment of costs or attorney's fees from the portion of recovery attributable to those receiving such notice.  Should the personal representative, or one or more of the beneficiaries join in the litigation with separate counsel representing their respective interests, the portion of recovery attributable to such claimants shall not be subject to such agreement or arrangement, absent written consent after full disclosure.  However, the personal representative or any beneficiary may petition the court for a review of the proposed payment of costs and distribution of attorney fees, and the trial court may equitably adjust and allocate fees among the attorneys based on the quantitative and qualitative contribution of each to the case, provided however, that so long as an attorney is reasonably involved, and makes a reasonable contribution to all aspects of the litigation, no deduction should be made from his or her fees.

### 5. Control of the Litigation -- "First to File."

¶70.  In his January 19, 2002, order denying consolidation, the trial court characterized the phrase, "first to file an action has a right to prosecute it to its conclusion," as an "old established rule," which he held was not  "diluted" by *Franklin*, which allowed consolidation of two wrongful death suits for the same death.  He believed such consolidation required agreement of the parties.  Specifically, the trial court stated, "The Wrongful Death Statute provides for any beneficiary to bring the action in behalf of all beneficiaries and the 'first to file' shall have control of the handling of the case."

¶71.  Then, in an order dated February 3, 2003, granting the Long's motion for reconsideration, the trial court stated:

This court finds the wrongful death statute in no way precludes individual wrongful death claimants from joining in the first filed suit and having their own attorney represent them and this court is respectful of each client's right to retain their individual attorney. . . subject to this court's previous ruling wherein this court established that [the Hopkins Firm] shall have control of the litigation.

In an attempt to explain what he meant by "control of the litigation," the trial court stated:

That this court expects [the Hopkins Firm] and Weatherly to cooperate with one another in the prosecution of this wrongful case and coordinate their efforts if possible and not to duplicate their efforts to the detriment of their respective clients where this can be avoided, and suggests to all attorneys representing claimants in this cause that if they can't cooperate then they should seek counsel and advice from the fMississippi Bar Association on these matters;

This Court further ORDERS that [Weatherly] shall be entitled to attend any and all depositions and participate in the same as he sees fit, and he shall be entitled to retain any and all expert witnesses that he feels is necessary to prosecute the claim and that he shall be entitled to subpoena any and all records and investigate the claim as he sees fit, subject to the right of [the Hopkins Firm] to control the litigation, which right shall not be exercised in such a way as to preclude [Weatherly] from effectively representing his clients, [the Longs].

¶72. Thereafter, in an order entered March 24, 2003, the trial court again (seemingly) reversed his position by stating that the "Order of February 6, 2003, should be and is reconsidered and voided." The trial court went on to hold that "the Order of December 19, 2002, is reaffirmed and reinstated. . . ."

¶73. In reinstating the December order, the trial court simply reaffirmed the previous refusal to consolidate the two suits. In voiding the February order, the trial court offered no specific finding or guidance regarding the Long's right to have counsel of their choice in Lori's "first-filed" suit, or Weatherly's right to represent his clients in that suit. It appears the trial court believed the chancery court had signed an order approving Lori's suit on behalf of all wrongful death beneficiaries, and further approving the representation by the Hopkins Firm of Lori, in

her capacity as representative of the beneficiaries. This incorrect belief apparently led the trial court to conclude that neither the Longs nor Weatherly should be allowed to further participate.

¶74. Thus, the trial court seems to have abandoned his prior order based on "each client's right to retain their individual attorney," to his prior position that "control of the litigation" was decided by the chancery court.[19]

¶75. Confusion concerning "control of the litigation" and the so-called "first to file" rule is not limited to the state courts. In attempting to decide cases according predictions of how this Court would hold, federal courts have determined that "Mississippi law awards control of the wrongful death suit to the wrongful death heir . . . who wins the race to the courthouse. That right encompasses all available trial tactics, including the right to settle. *West v. Hughes*, N. 3:95CV003-D-A 1996 WL 3370672 (N.D. Miss. 1996);[20] *Rampy ex rel. Rampy v. Austin*, 718 F. Supp. 556 (S.D. Miss. 1989).

¶76. We recognize that ample dicta, and even some direct authority, exists under our prior case law which justifies the conclusions reached by the trial court here and by the federal court in *Rampy*. However, for several reasons, we must reject the proposition that the first heir to

---

[19]At the hearing prior to the December order, the trial court stated: "the best way to handle any type of wrongful death action is to have the estate opened and get some authority to file the lawsuit, because without authority from the chancery court to file a lawsuit, you're really just traveling along at your own risk because neither party has a right until the chancery court authorizes it, as I understand the law."

[20]Some states avoid the "race to the courthouse" problem by providing that only the personal representative may file a wrongful death suit. *See, e.g.,* Mass. Code Ann. c. 229, § 2; N.C. Code Ann. § 28A-18-2.

reach the courthouse with a lawyer will "control the litigation" to the exclusion of participation by other heirs who wish to join with other counsel of their choosing.

¶77. Perhaps the most glaring fallacy in such a policy is the potential for conflicts of interest which – should a view contrary to our view today prevail – would be both legislatively ordered and court sanctioned.

¶78. We are persuaded that, absent the Statute, wrongful death litigation would be reasonably uncomplicated. The rules to be followed are not substantially different from those which apply to any personal injury suit where multiple plaintiffs pursue a claim against one or more defendants. Such matters as joinder, "Control of the litigation," and participation by counsel, are left to the sound discretion of the trial judge. We observe few problems with such cases, and we are confident that today's decision will bring wrongful death litigation to its rightful place under the Mississippi Rules of Civil Procedure.

## CONCLUSION

¶79. We do not know the number of wrongful death beneficiaries[21] in the case before us. We know only that, according to the record before us, the Hopkins Firm represents Lori, and Weatherly represents the Longs. Because the Hopkins Firm filed the first suit on behalf of all wrongful death beneficiaries, we assume all such beneficiaries received notice of the litigation. If not, they should immediately be notified. Assuming there are no further objections, the Hopkins Firm shall proceed to represent all beneficiaries, except the Longs,

---

[21]In his December 19, 2002, order, the trial court found that Huey Long "left surviving six (6) adult children and the heirs at law of one child who predeceased him. Under the statute, these heirs at law would share the recovery of their deceased parent. The record does not reflect any involvement of any of the heirs, other than Lori and the Longs.

who will continue to be represented by Weatherly. The Hopkins Firm's attorney fee contract with Lore, as wrongful death beneficiary, shall apply to all beneficiaries represented by the Hopkins Firm.

¶80. Since there exists no apparent conflict of interest between Lori and the estate, and since the estate, through Lori as administratrix, has employed the Hopkins Firm to represent the estate, the Hopkins Firm will represent the estate, provided the pleadings are amended to assert a claim on behalf of the estate.

¶81. "Control" of the litigation, including such issues as depositions, experts and the like, shall be addressed as in other cases, with disputes to be resolved in the sound discretion of the trial court.

¶82. Counsel will be paid their fees and expenses from their respective client's recovery, according to their agreements, provided however, that any party or counsel who believes in good faith that attorney fees have been distributed in a manner which is grossly out of proportion to the work performed, may petition the trial court for a review of the work performed by all counsel and a more equitable distribution of attorney fees.

¶83. We reverse the circuit court's judgment, and we remand this case for further proceedings consistent with this opinion.

¶84. **REVERSED AND REMANDED**.

**SMITH, C.J., COBB, P.J., EASLEY AND CARLSON, JJ., CONCUR. WALLER, P.J., DIAZ, GRAVES AND RANDOLPH, JJ., NOT PARTICIPATING.**

**APPENDIX A**

*History of Wrongful Death Cause of Action*

Many believe the English common law did not recognize suits for wrongful death, thus requiring legislative enactment to establish and shape the cause of action. Curiously enough, the assumption that no precedent exists in the English common law for wrongful death claims has been "largely unexamined by the American courts that adopted it simply because of blind obedience to precedent."[22]  As will be seen, the "precedent" relied upon is a long line of cases which incorrectly assumed there was no precedent for the common law claim.

The fact is, a variety of civil wrongful death claims were allowed under the English common law, going back at least as far as the Middle Ages and the Norman Conquest in 1066, including the "wer,[23]" the "wite,[24]" and the "appeal of murdrum.[25]"  1 William Holdsworth, *A History Of English Law* 18-22 (5th ed. 1956).  English history is rich with examples of various wrongful death claims which ebbed, flowed and evolved over time.  The confusion

---

[22]William S. Bailey, *Flawed Justice: Limitation of Parental Remedies for the Loss of Consortium of Adult Children*, Seattle U.L. Rev. 941, 949 (2004).

[23]The "wer" or "*capitis oestimatio*" was a sum certain to be paid to the decedent's kin, the amount of which depended upon the status or rank of the decedent.  Wex S. Malone, *The Genesis Of Wrongful Death*, 17 Stan. L. Rev. 1043, 1055 (1965), citing 2 Holdsworth, A History of English Law 43-46 (3d ed. 1923).

[24]The "wite" was "reparation to the King or overlord for the breach of his peace or *mund*.  *Id.*

[25]The "appeal of murdrum," although technically not a civil cause of action for damages, was generally used, with judicial approval, by the decadent's kin to "exact monetary payment from the accused."  *Id.*, *citing* 2 Holdsworth, A History of English Law 47-49.  The practice was not abolished until 1819.  An Act to abolish Appeals of Murder, 1819, 59 Geo. 3, c. 46.

began in 1808, when England's eight-hundred year history which had certainly recognized wrongful death claims was abruptly, and inexplicably, changed.

Turning deaf ears and blind eyes to English history, Lord Ellenborough[26] handed down *Baker v. Bolton*, 1 Camp. 493, 170 Eng. Rep. 1033 (Nisi Prius 1808)). History characterizes *Baker* as wrongly decided, and an egregious adulteration of English wrongful death law.[27]

The plaintiff's wife in *Baker* was killed in a stagecoach accident. At the conclusion of the resulting trial, Lord Ellenborough instructed the jury that damages would be limited to loss of society and suffering from the time of the accident until death (approximately one month). He then, without citation of authority or explanation, declared that, "[i]n a civil court, the death of a human being could not be complained of as an injury." *Id.*

---

[26]According to Dean Prosser, Lord Ellenborough was "not the English judge most distinguished by a reputation for common sense." William L. Prosser & John W. Wade, *Cases and Materials on Torts* 1088 (5th ed. 1971).

[27]Characterizing *Baker* as "one of the most criticized decisions in legal history," Dean Prosser stated:

> The result was that it was more profitable for the defendant to kill the plaintiff than to scratch him, and that the most grievous of all injuries left the bereaved family of the victim, who frequently were destitute, without a remedy. Since this was intolerable, it was changed in England by the passage of the Fatal Accidents Act of 1846, otherwise known as Lord Campbell's Act, which has become a generic name for similar statutes. Every American state now has a statutory remedy for wrongful death.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* §§ 125, 127 (5th ed. 1984).

Lord Ellenborough's erroneous decision[28] prevailed for only thirty-eight years, when the British Parliament overcame it with Lord Campbell's Act (Fatal Accidents Act), 1846, 9 & 10 Vict., c. 93. Since that time, numerous jurisdictions in the United States have followed suit with variations of Lord Campbell's Act, together with companion "survival statutes."[29] Mississippi joined the parade in 1857.

Nine years following the 1808 *Baker* decision, Mississippi gained statehood, and adopted its first of four Constitutions. Since that date forward (as discussed in Appendix B), the judicial power in Mississippi has been vested by our Constitution in this Supreme Court. Thus, this Court could have recognized a common law cause of action for wrongful death, despite the thirty-eight year hiatus created by Lord Ellenborough's blunder in *Baker*. The direction this Court would have taken, had the issue been raised, is not clear. No Mississippi case, commentary or legislative enactment, concerning wrongful death, can be found in the early years of the Nineteenth Century. Nevertheless, for reasons we are unable to learn,[30] the legislature enacted Mississippi's first wrongful death statute in 1857.

---

[28]As a result of Lord Ellenborough's error, many mistakenly believe that English common law never provided a cause of action for wrongful death. *See, e.g.*, **Gentry v. Wallace**, 606 So. 2d 1117, 1120 (Miss. 1992) ("Thus, at common law, the wrongful death cause of action did not exist."); **Boroughs v. Oliver**, 217 Miss. 280, 64 So. 2d 338, 339 ( Miss. 1953) (Mississippi statute is in derogation of the common law). One explanation of the conflict in historical accounts is included in Justice Harlan's opinion for the court in **Moragne v. States Marine Lines, Inc**., 398 U.S. 375, 90 S.Ct. 1772, 26 L. Ed. 2d 339 (1970).

[29]For an excellent analysis of the history and juxtaposition of common law, Statutes and survival statutes, see Judge Chandler's discussion for the court in the case of **In re Estate of England** 846 So. 2d 1060, 1064-69 (Miss. Ct. App. 2003).

[30]There appear to be no cases or commentary demanding a wrongful death statute, and no reported cases are found for decades following passage of the 1857 Statute.

*The Mississippi Wrongful Death Statute.*

Chapter 61, art. 48 of the 1857 Mississippi Code, provided:

Whenever the death of any person shall be caused by any such wrongful or negligent act, or omission, as would if death had not ensued, have entitled the party injured or damaged thereby, to maintain an action and recover damages in respect thereof, and such deceased person shall have left a widow or children, or both, or husband or father, the person or corporation, or both, that would have been liable if death had not ensued, and the representatives of such person, shall be liable for the damages, notwithstanding the death and the action may be brought in the name of the widow for the death of her husband or by the husband for the death of his wife, or by the parent for the death of a child, or in the name of a child for the death of an only parent; the damages to be for the use of such widow, husband or child, except that in case a widow should have children, the damages shall be distributed as personal property of the husband. . . . In every such action, the jury may give such damages as shall be fair and just, with reference to the injury resulting from such death to the person suing; but every such action shall be commenced within one year after the death of such deceased person.

This original version of the Statute was completely substantive. It provided a new cause of action,[31] identified the parties entitled to recovery, described the damages which could be recovered, and provided a statute of limitations.

The early Statute applied only in cases where "such deceased person shall have left a widow or children, or both, or husband or father. This unexplained exclusion of "mothers" (arguably an oversight) was briefly remedied by the revision of the Statute found in the 1871 Code. However, for reasons known only to those who are no longer with us, the Legislature again excluded "mothers" from the Statute's language in the 1880 Code, only to return them

---

[31]The Statute's language, ". . . the jury may give . . .damages . . . resulting from such death to the person suing; . . ." creates new causes of action. *See Gentry v. Wallace*, 606 So. 2d 1117, (Miss. 1992); **Phillips ex rel. Phillips v. Monroe County**, 331 F.3d 369 (5th Cir. 2002), *citing* **Thames v. Missi. ex rel. Shoemaker**, 117 F.2d 949, 951 (5th Cir. 1941) (Mississippi's Statute creates an independent cause of action).

by amendment enacted on March 15, 1884, where they have remained for one hundred and twenty years. *See **Natchez, Jackson & Columbus R.R. v. Cook***, 63 Miss. 38 (1885).

During these early years, the Legislature amended the Statute several times, but the amendments related to substantive matters. This changed with an amendment passed in 1896, Laws 1896, ch 86. This amendment and its progeny are essential to an understanding of our current problem, and it will be helpful to examine, in some detail, this original stray by the Statute from substance to procedure. As discussed *infra*, the procedural provisions injected in 1896 apparently had more to do with addressing the specific concerns of a single lawyer in a particular case, than with the application of the law, in general.

*The Statute's procedural provisions -- The Critz and McLaurin Amendments.*

Beginning in 1873, and continuing through the mid-1900's, there existed no family of lawyers in Mississippi more prolific and prominent in litigation and appellate practice than the Critz family of West Point.[32] In 1885, Frank A. Critz was retained by Mrs. Willie McVey to file suit against the Illinois Central Railroad Company for the death of her husband. In filing the suit, Critz asserted claims by Mrs. McVey, as administratrix of her husband's estate under Section 1916 of the Code of 1892, and on behalf of herself and her infant child as wrongful death beneficiaries under Section 663 of the Code of 1892. The claim was also brought under Section 193 of the 1890 Constitution, which provides a remedy for injury to railroad

---

[32]It was not unusual for the Critz family of lawyers to have up to ten appeals pending before this Court at the same time. From their first case in 1873, until the last in 1955, the lawyers of the Critz family prosecuted and defended approximately 160 appeals before this Court, many of which involved claims for wrongful death. *See, e.g., **Young v. Columbus & G. Ry.***, 165 Miss. 287, 147 So. 342 (1933); ***Southern Ry. Co. in Mississippi v. Free***, 95 Miss. 739, 50 So. 442 (1909); ***Hamlin v. Southern Ry.,*** 76 Miss. 410, 25 So. 295 (1899).

employees. The historic documents do not explain why Critz did not file two separate suits, as conventional wisdom and the practice of the day would have suggested.[33]

It is entirely possible, as suggested by later opinions of this Court, that Critz was misled by this Court's opinion in ***Natchez, Jackson and Columbus R.R. v. Cook***, 63 Miss. 38 (1885), in which claims for both the estate and the wrongful death beneficiary were presented. However, because the parties in ***Cook*** had entered an agreement that all claims would be presented in one case, ***Cook*** was limited to its facts. ***Id***.

In any case, on February 3, 1886, this Court rejected Critz's argument and refused to allow Mrs. McVey to pursue both claims in one suit. Specifically, this Court held:

> The right of action which, notwithstanding the death of the party injured, survives to his personal representative . . . is entirely distinct from the action given to the next of kin by [the Statute]. They may coexist, but have no connection. ***Railroad Co. v. Phillips***, 64 Miss. 693, 2 South. 537.

***McVey v. Ill. Cent. R.R.*** 73 Miss. 487, 493, 19 So. 209, 210 (1886). Apparently, Critz viewed this Court's decision as only a temporary setback, because twelve days later, he introduced H.B. 548,[34] which proposed to amend the Statute in several respects, including a provision which not only allowed, but *required*, the claims of the estate and the wrongful death

---

[33]From 1857 until an amendment to the Statute enacted in 1896, discussed *infra*, there were two separate causes of action which were brought in two separate lawsuits. J. Jackson, M. Miller, *Encyclopedia of Mississippi Law*, Section 77:1 (2002), citing ***Bussey v. Gulf & S.I.R. Co***., 79 Miss. 597, 31 So. 212 (1902). Interestingly, it appears that Critz may have held the heterodoxal view that there was, indeed, a common law claim for wrongful death, and that reliance on the Statute was unnecessary. In his brief in ***McVey***, Critz stated: "The maxim, *actio personalis moritur cum persona*, is a barbarous one, and has never commended itself to the best authorities. ***McVey v. Ill. Cent. R. R.*** 73 Miss. 487, 491 (1886). (Citations omitted).

[34]In addition to his extensive and well-regarded law practice, Critz also served in the Legislature. The bill was introduced to the Committee on Railroads, of which Critz was Chairman.

beneficiaries to be brought in one suit. Critz's bill was passed and became effective on March 23, 1896, only five weeks after introduction, and less than two months after losing his case before this Court.

A short time thereafter, Governor Anselm McLaurin submitted a bill to the legislature which was almost identical to Critz's bill, except for Section Four, which stated:

> All suits pending in any court at the time of the approval of this act and which were also pending at the time said chapter went into effect, shall not be affected by any of its provisions; but all such suits shall be conducted and concluded under the laws in force prior to the time of the approval of said act, on March 23, 1896.

It is unclear why Governor McLaurin introduced the bill, if not to put an end to Critz's prosecution of the McVey litigation. By its retroactive application of the Critz legislation, the McLaurin amendment would have ended any attempt by Critz to keep alive, or revive, the *McVey* suit. In any case, the McLaurin version of the Critz amendment was approved on January 27, 1898, and became Chapter 65 of the 1898 Mississippi Laws. This act found its way into the 1906 Code, and we find no further reference to the McVey litigation.

The McLaurin version of the Critz amendment contained other procedural provisions, including one which prohibited executors and administrators from bringing the wrongful death suit unless "the deceased have neither husband, or wife, or children, or father, or mother, or sister, or brother, . . ." This was, indeed, a curious provision since the Statute, for the first time, *required* the claims of the estate to be brought in the same suit as the claims of the wrongful death heirs, but then *prohibited* the personal representative from bringing the suit; that is, unless the decedent left no wrongful death beneficiary. It is difficult to know why such a provision would have been included. However, we are provided some insight into Critz's

-37-

thinking by his brief in the *McVey* appeal. See *McVey*, 73 Miss. at 488-91.[35] Critz claimed

that his amendment was the only way to "bring about harmony."

Whether his motivation was to simplify litigation, or to accomplish legislatively what

he could not in this Court, Critz clearly, for the first time, injected procedural[36] provisions into

the Statute. Thus began a one hundred and eight year struggle by those who bring wrongful

death claims to identify a sensible pattern of precedent which is both instructive and workable.

As the case before us today bears witness, it hasn't happened.

From this Court's perspective, because the Critz amendment and its progeny were

enacted by the Legislature, and because Justices on this Court have traditionally been sensitive

to their obligation to "follow the law, not make the law," this Court has, for over a century,

attempted to guess and implement the intent of the Statute. By our opinion today, we fulfill

our Constitutional obligation to bring order, understanding and predictability to the procedural

aspects of the judicial pursuit of a wrongful death claim.

---

[35]The briefs of counsel are provided in the Mississippi Reports, but not in the Southern Reporter. Thus, only the Mississippi Reports citations are included herein for references to briefs of counsel.

[36]"While it is true that the Statute (Miss. Code Ann. § 11-7-13) requires one suit, this is merely a procedural matter." *Thiroux ex rel. Cruz v. Austin ex rel. Arceneaux*, 749 So. 2d 1040, 1042 (Miss. 1999) (McRae, J., specially concurring).

**APPENDIX B**

*The Mississippi Constitution.*

We wish to make it clear that this Court is fully committed to the deference due the legislature in creating the laws of this state. We possess no power or authority to legislate, which includes the power to create and amend substantive law. Since 1817, such power has been exclusively reserved to the Legislature. Miss. Const., Art. 1, Section 1. Additionally, the power to legislate inherently includes, and necessarily involves, the power to establish and enforce the procedure by which such Legislation must be created. Thus, subject only to provisions of the Mississippi and federal constitutions, the Legislature promulgates, places into effect, and enforces the practice, procedure and timing involved in transforming an idea into law. We regard the exclusive right of the legislature to do these things as inviolate.

In that same regard, this Court has been charged with the responsibility, and granted the authority, over all things judicial within this state. *Id*. Such judicial matters inherently include and necessarily involve, the practice and procedure by which all things judicial are accomplished. This law, and these concepts, are not new.

The original Mississippi Constitution adopted in 1817, and those that followed in 1832, 1868, and 1890, each provided that the judicial power of the state is vested in the Supreme Court.[37] Article IV, Section 1, of the 1832 Constitution provided: "The judicial power of this state shall be vested in one high court of errors and appeals, and such other courts of law and equity as are hereafter provided for in this constitution."

_____

[37]Prior to 1868, what is now the Supreme Court was referred to at the "High Court of Errors and Appeals."

Article VI, Section 1, of the 1868 Constitution provided: "The judicial power of the State shall be vested in a Supreme Court, and such other Courts of law and equity as are hereafter provided for in this Constitution." Article III, Sections 1, and 2, provided: "The powers of the Government of the State of Mississippi shall be divided into three distinct departments, and each of them confided to a separate Magistracy, to-wit: Those which are Legislative to one; those which are Judicial to another, and those which are Executive to another. No person or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted."

Article 1, Sections 1, and 2, of our current Constitution, which each Justice on this Court swore an oath to uphold, provides:

> The powers of the government of the State of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one; those which are judicial to another; and those which are executive to another. No person or collection of persons, being one, or belonging to one, of these departments, shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments.

Article 6, Section 144, of that same Constitution, provides: "The judicial power of the State shall be vested in a supreme court and such other courts as are provided for in this constitution."

Thus, from the time Mississippi was admitted into the Union, until today, the Supreme Court has been constitutionally obligated to exercise the "judicial power" of this State. This

-40-

includes responsibility for the procedural rules to be followed in filing, prosecuting and appealing litigation – civil and criminal – within the courts of our state.

*Newell v. State.*

For generations, this Court was not aggressive in taking a leadership role in all things judicial, including procedural matters related to judicial processing of substantive law enacted by the legislature. As a result, our judiciary has struggled to adapt well-intentioned, but archaic, ill-suited procedural statutes, to the needs of litigants. The beginning of the end of the struggle was marked by ***Newell v. State***, 308 So. 2d 71 (Miss. 1975), wherein this Court was faced with a conflict between unworkable procedural statutes enacted by the legislature, and its own constitutional mandate to fulfill its responsibility to the judiciary for the fair administration of justice. Justice Neville Patterson, speaking for a unanimous Court, stated:

> We are keenly aware of, and measure with great respect, legislative suggestions concerning procedural rules and they will be followed unless determined to be an impediment to justice or an impingement upon the constitution. The inherent power of this Court to promulgate procedural rules eminates from the fundamental constitutional concept of the separation of powers and the vesting of judicial powers in the courts. ***Matthews v. State***, 288 So. 2d 714 (Miss. 1974); ***Gulf Coast Drilling & Exploration Co. v. Permenter***, 214 So. 2d 601 (Miss. 1968); and ***Southern Pacific Lbr. Co. v. Reynolds***, 206 So. 2d 334 (Miss. 1968), wherein the following is stated:
>
>> . . . The phrase "judicial power" in section 144 of the Constitution includes the power to make rules of practice and procedure, not inconsistent with the Constitution, for the efficient disposition of judicial business. 206 So. 2d at 335.
>
> Consider Franck, *Practice and Procedure in Mississippi: An Ancient Recipe for Modern Reform*, 43 Miss. L.J. 287 (1972).

* * *

The procedural changes needed to meet the needs of a particular era and to maintain the judiciary's constitutional purpose would be better served, we believe, if promulgated by those conversant with the law through years of legal study, observation and actual trials in accord with their oaths rather than by well-intentioned, but over-burdened, legislators of other pursuits and professions. As are cognizant of the fact that inertia is the easier route for judges, but presently respond to that which was stated by Justice Griffith in Shoemake v. Federal Credit Co., 188 Miss. 683, 192 So. 561 (1940), in dissenting:

> It is easier, of course, to decide cases and to write opinions by floating down stream in a course of least resistance, upon the restful support of a literal interpretation. But our books are full of cases where the Court has looked beyond the mere letter of statutes and has administered them according to the justice of their purpose. . . . 188 Miss. At 692, 192 So. At 563.

*Newell*, 308 So. 2d at 76-77.

Six years following *Newell*, Chief Justice Patterson signed an order adopting and promulgating the Mississippi Rules of Civil Procedure, which became effective for all civil actions filed on or after January 1, 1982. These new rules of procedure superseded numerous procedural statutes.

The issue was again discussed by Justice Reuben V. Anderson in his dissent in *Pruett v. State*, 574 So. 2d 1342 (Miss. 1990), where he stated:

> Since [*Newell*], this Court has expressed time and time again its inherent power to make rules that affect the Court. *See, e.g.*, **In re Mississippi Judicial Information System**, 533 So. 2d 1110 (Miss. 1988) (establishing judicial information system); **Southern Farm Bureau Casualty Ins. Co. v. Holland**, 469 So. 2d 55, 62 (Miss. 1984) (Anderson, J., specially concurring, joined by Prather, Robertson and Sullivan, JJ.,); **City of Mound Bayou v. Roy Collins Const. Co.**, 457 So. 2d 337, 342 (Miss. 1984) (Supreme Court rule supersedes statute); **Glenn v. Herring**, 415 So. 2d 695, 696 (Miss. 1982) (statute requiring disposition of cases by judges within six months unconstitutional); 〔 [38] 〕

---

[38]The need for this Court to be ever-vigilant is demonstrated by Miss. Code. Ann. § 9-4-3 (Rev. 2002), which purports to require the Court of Appeals to decide all cases before it within 270

> *Jackson v. State*, 337 So. 2d 1242, 1253 (Miss. 1976) (since death penalty statute was unconstitutional, Court promulgated guidelines for bifurcated trial in capital cases); *See also*, *State v. Caldwell*, 492 So. 2d 575, 576 (Miss. 1986), judgment vacated , 479 U.S. 1075, 107 S. Ct. 1269, 94 L. Ed. 2d 130 (1987) (court has "inherent power to procedurally control its business"); *Riely v. State*, 562 So. 2d 1206, 1211 (Miss. 1990) (statute is constitutional on its face as construed and complemented by this opinion).

*Pruett*, 574 So. 2d at 1351(Anderson, J., dissenting).

It is against this constitutional background that we must examine the Statute and decide the case before us.

---

days, and this Court to decide all cases before it on direct appeal within 270 days, and cases on certiorari within 180 days.  This statute was enacted only eleven years following *Glenn*, which – citing *Newell* – held such statutes to be unconstitutional.