GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. Robert K. Milner; his wife, Patricia K. Milner; and Wachovia Bank, N.A., as successor in interest to First Union National Bank, filed suit against Rebuild America, Inc., to set aside a tax sale and subsequent deed to property owned by the Milners in Pearl River County, Mississippi. The chancellor set aside the tax sale because the statutory requirements for notice to the owners and lien holders were not met. Further, the chancellor set aside a subsequent deed from the Milners to Rebuild America because there was not proper or adequate consideration to support the deed. Rebuild America now appeals and argues that the chancellor improperly: (1) overruled Rebuild America’s motion to dismiss, (2) set aside the tax sale, and (3) set aside the quitclaim deed executed by the Milners to Rebuild America. We find no error and affirm.
 

 
 *974
 
 FACTS
 

 ¶ 2. The Milners were record owners of certain real property located in Pearl River County, Mississippi. On December 19, 2000, the Milners executed a Deed of Trust to Jim Walter Homes, Inc., securing the purchase price of the home built on their property. The Deed of Trust was recorded and subsequently assigned numerous times. The last assignment was to First Union National Bank.
 

 ¶ 3. The Milners failed to pay the 2002 ad valorem taxes on their property; thus, the property was sold to Wachovia Bank, for Magnolia Investors, LLC, in a tax sale on August 25, 2003. The chancery clerk sent notice to Robert Milner and to First Union National Bank via certified mail with return receipt. When no redemption was made on or before August 25, 2005, the property was finally sold by virtue of the chancery clerk’s conveyance to Magnolia Investors dated September 26, 2005.
 

 ¶ 4. Wachovia Bank, for Magnolia Investors, conveyed its interest in the property by a quitclaim deed to Rebuild America. Rebuild America then began communications with Patricia Milner. Tiffany Cone, a representative of Rebuild America, testified that she spoke with Patricia Milner who was interested in purchasing the property from Rebuild America. Cone testified that she asked if the Milners would be willing to sign a quitclaim deed to create a tidier file in accordance with Rebuild America’s standard procedure. However, Patricia Milner testified as follows:
 

 [Cone] called me and told me that REO America had bought our house at a land sale and that they owned the property. She also told me that if I was [sic] to sign the quit[claim] deed to her, for her, that they would make sure that they could find someone to refinance the house and that we could keep the house, that if I did not sign the papers, that they would give us 30 days and we would have to move out, that they would evict us.
 

 The Milners signed a quitclaim deed conveying their interest in the property to Rebuild America on November 3, 2006, the day after the complaint in this case was filed on November 2, 2006.
 

 ¶ 5. The chancellor considered the testimony and evidence presented at trial, and he held that: (1) the tax sale should be set aside for the chancery clerk’s failure to comply with the statutory notice requirements, and (2) the quitclaim deed from the Milners to Rebuild America should be set aside for the lack of proper and adequate consideration.
 

 STANDARD OF REVIEW
 

 ¶ 6. This Court maintains a limited review of a chancellor’s findings of fact. We will not reverse the factual findings of the chancellor when supported by substantial evidence unless the Court can say that the findings are manifestly wrong, clearly erroneous, or amount to an abuse of discretion.
 
 Morgan v. West,
 
 812 So.2d 987, 990(¶ 7) (Miss.2002) (citation omitted). “In matters that are questions of law, this Court employs a de novo standard of review and will only reverse for an erroneous interpretation or application of the law.”
 
 Id.
 
 at (¶ 8) (citations omitted).
 

 ¶ 7. Further, when an appeal concerns property sold in a tax sale, this Court has held: “Statutes dealing with land forfeitures for delinquent taxes should be strictly construed in favor of the landowners.
 
 Brown v. Riley,
 
 580 So.2d 1234, 1237 (Miss.1991). Any deviation from the statutorily mandated procedure renders the sale void.”
 
 Roach v. Goebel,
 
 856 So.2d 711, 716(¶ 29) (Miss.Ct.App.2003) (citing
 
 Hart v. Catoe,
 
 390 So.2d 1001, 1003 (Miss. 1980)).
 

 
 *975
 
 ANALYSIS
 

 1. Whether the chancellor improperly overruled Rebuild America’s motion to dismiss.
 

 ¶ 8. In response to the complaint filed in this case, Rebuild America filed a motion to dismiss along with its answer and counterclaim. Rebuild America argued that because the Milners transferred their interest in the property via the quitclaim deed to Rebuild America, the Milners relinquished any right to challenge the tax sale; thus, they lacked standing to pursue their claims.
 

 ¶ 9. The motion to dismiss was renewed before the trial began. The chancellor heard argument from both parties and overruled the motion, and he ruled: “I think we’re now prejudiced as to how this deed may ultimately fit into the chain of title of the property.” On appeal, Rebuild America again argues that the Milners lacked standing to challenge the validity of the tax sale.
 

 ¶ 10. We review the trial court’s grant or denial of a motion to dismiss under a de novo standard of review.
 
 Harris v. Miss. Valley State Univ.,
 
 873 So.2d 970, 988(¶ 54) (Miss.2004). “When considering a motion to dismiss, the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond a reasonable doubt that the plaintiff will be unable to prove any set of facts in support of his claim.”
 
 Id.
 
 (citing
 
 T.M. v. Noblitt,
 
 650 So.2d 1340, 1342 (Miss.1995)).
 

 ¶ 11. Rebuild America cites
 
 Osborn v. Harrison,
 
 447 So.2d 122, 123 (Miss.1984), for the proposition that “it is necessary, in order to have standing to sue to remove a tax deed as a cloud on title, that the plaintiff prove title in himself, or such interest as will warrant the action.... ” Rebuild America claims that the quitclaim deed relinquished any interest the Milners had in the property; thus, the Milners’ standing to contest the tax sale was also relinquished.
 

 ¶ 12. However, our supreme court recently held that the issue of standing is determined at the commencement of the lawsuit.
 
 Delta Health Group, Inc. v. Estate of Pope,
 
 995 So.2d 123, 126(¶ 13) (Miss.2008). Even if, as Rebuild America argues, the quitclaim deed relinquished the Milners’ interest in the property, the deed was not signed by the Milners until after the filing of the complaint. The lawsuit had already been commenced; therefore, we need not address the effect, if any, that the quitclaim deed had on the Milners’ standing in this matter. Accordingly, this issue has no merit.
 

 2. Whether the chancellor erred, in setting aside the tax sale.
 

 ¶ 13. The chancellor found that the required statutory notice of the tax sale was not given because of (1) the chancery clerk’s failure to notify Patricia Milner individually, (2) the chancery clerk’s failure to send the lien holder’s notice to the address shown on the recorded instrument, and (3) the lack of a sheriffs return on the notice. Rebuild America argues that the chancellor erred as a matter of law by voiding the tax sale.
 

 ¶ 14. Notice to property owners is governed by Mississippi Code Annotated section 27-43-3 (Supp.2008) which states:
 

 The clerk shall issue the notice to the sheriff of the county of the reputed owner’s residence, if he be a resident of the State of Mississippi, and the sheriff shall be required to serve personal notice as summons issued from the courts are served, and make his return to the chancery clerk issuing same. The clerk shall also mail a copy of same to the reputed
 
 *976
 
 owner at Ms usual street address, if same can be ascertained after diligent search and inquiry, or to his post office address if only that can be ascertained, and he shall note such action on the tax sales record. The clerk shall also be required to publish the name and address of the reputed owner of the property and the legal description of such property in a public newspaper of the county in which the land is located, or if no newspaper is published as such, then in a newspaper having a general circulation in such county. Such publication shall be made at least forty-five (45) days prior to the expiration of the redemption period.
 

 [[Image here]]
 

 The failure of the landowner to actually receive the notice herein required shall not render the title void, provided the clerk and sheriff have complied with the duties herein prescribed for them.
 

 Should the clerk inadvertently fail to send notice as prescribed in this section, then such sale shall be void and the clerk shall not be liable to the purchaser or owner upon refund of all purchase money paid.
 

 Notice of the tax sale was sent to “MILNER, ROBERT K ETUX” via certified mail with return receipt. Robert Milner testified that he signed for the letter, but he never read the letter.
 

 ¶ 15. First, it is clear that the record does not contain the sheriffs return on the notice as required by section 27-43-8. Second, as the chancellor stated in his order, the supreme court has held that section 27-43-3 “contemplates that
 
 each
 
 owner shall receive the notice required by the statute.”
 
 Brown,
 
 580 So.2d at 1237. While the “et ux” following Robert Mil-ner’s name translates to “and wife,” the record shows that Robert Milner, by signing for the certified letter, was the only owner to receive notice. Patricia Milner did not receive separate notice of the tax sale. Thus, just as in
 
 Brown,
 
 “[t]he notice was also fatally defective in attempting to serve both [Milners] with a single notice.”
 
 Id.
 

 ¶ 16. Third, the proper notice was not given to First Union National Bank, the lien holder of the property. Mississippi Code Annotated section 27-43-7 (Rev. 2006) requires that:
 

 The notice shall be mailed to said lien-ors, if any, to the post-office address of the lienors, if such address is set forth in the instrument creating the lien, otherwise to the post-office address of said lienors, if actually known to the clerk, and if unknown to the clerk then addressed to the county site of the said county.
 

 ¶ 17. The original Deed of Trust executed by the Milners to Jim Walter Homes was subsequently assigned seven different times. The third, fifth, and seventh assignments were all assignments to First Union National Bank. The chancery clerk attempted to serve notice of the tax sale to First Union National Bank via certified mail. However, the chancery clerk mailed the notice to the address for First Union National Bank found in the third assignment. That address was in Charlotte, North Carolina.
 

 ¶ 18. Section 27-43-7 clearly states that the notice should be mailed to the address set forth in the instrument creating the lien. At the time notice was sent, the Deed of Trust had been assigned the seventh time to First Union National Bank with an address in Tampa, Florida. Under section 27-43-7, the notice should have been mailed to that address of the current lien holder.
 

 ¶ 19. As the supreme court held in
 
 Brown:
 

 
 *977
 
 the most important safeguard involving any person who stands to suffer from some official action is prior notice. This gives the recipient an opportunity to prepare himself and be heard. Notice, therefore, by far is the paramount factor and purpose of all process. This, however, is not the entire story. Certain statutory formalities attend every process ....
 

 Brown,
 
 580 So.2d at 1237 (internal citations omitted). We must strictly construe the notice statutes in favor of the landowners.
 
 Id.
 
 Accordingly, we find that the chancellor did not err as a matter of law by voiding the tax sale as Patricia Milner did not receive separate notice and the notice to the lien holder was sent to the incorrect address. There is substantial evidence to support the chancellor’s determination; therefore, this issue has no merit.
 

 S. Whether the chaneelbr erred in setting aside the quitclaim deed executed by the Milners to Rebuild America.
 

 ¶ 20. Lastly, Rebuild America argues that the chancellor improperly set aside the quitclaim deed on the basis of inadequate consideration. The Milners respond that there is substantial evidence to support the chancellor’s finding.
 

 ¶ 21. The deed itself recites as consideration: “ten dollars ($10.00) cash in hand paid, and other good and valuable consideration .... ” However, Patricia Milner testified at trial that she was never paid any amount in exchange for the deed. Cone, Rebuild America’s representative, testified that the only purpose of the deed was to create a cleaner file for the company. Based on the evidence presented, the chancellor found that the only consideration given was Cone’s offer to help obtain financing so the Milners could purchase the property. Because that financing was never obtained, the chancellor found inadequate consideration to support the deed.
 

 ¶ 22. Rebuild America’s sole argument against the chancellor’s finding is that, in a voluntary conveyance, the grantor cannot set aside a deed because of a lack of consideration absent an allegation of fraud.
 
 See Covington v. Butler,
 
 242 So.2d 444, 447 (Miss.1970) (quoting
 
 Campbell v. State Highway Comm’n,
 
 212 Miss. 437, 443, 54 So.2d 654, 656 (1951)). However, in
 
 Covington,
 
 the supreme court explicitly stated that it was “not contended that the conveyance [at issue] was not a voluntary action” on the part of the grantor “and there is no allegation that [the grantor] was induced to sign the deed by fraud.”
 
 Id.
 

 ¶ 23. Here, the record shows that the only reason the Milners signed the deed was to avoid eviction from their home. This ease is distinguishable from
 
 Coving-ton
 
 because there is indeed a contention that the conveyance was involuntary. Because the facts of this case are distinguishable from
 
 Covington,
 
 the chancellor was not prohibited from setting aside the deed due to the lack of consideration. Accordingly, this issue has no merit.
 

 ¶ 24. THE JUDGMENT OF THE PEARL RIVER COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J., NOT PARTICIPATING.