MYERS, P.J.,
for the Court:
¶ 1. Rebuild America, Inc., filed suit against David Earl Johnson, Chancery Clerk of Pearl River County, and David Allison, Sheriff of Pearl River County, after a tax deed it held was set aside for the defendants’ failure to strictly comply with the notice requirements of Mississippi Code Annotated section 27-43-3 (Supp. 2009). Rebuild America alleged that it was entitled to damages sustained as a result, “including, but not limited to acquisition costs, lost profits, attorney’s fees[,] and court costs.”
¶ 2. The trial court granted the defendants’ motion to dismiss with prejudice under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.
FACTS
¶ 3. This matter arises from the events surrounding a tax sale of property owned by Robert and Patricia Milner. Rebuild America ultimately came into possession of a tax title issued after the Milners failed to redeem their property during the statutory redemption period. The Milners brought suit against Rebuild America and were successful in getting the tax deed set aside in the chancery court. The instant suit was initiated after the trial court entered that judgment.
¶ 4. During the pendency of the instant appeal, the Milners’ suit came before this Court on appeal, and the chancellor’s judgment was affirmed. Rebuild America, Inc. v. Milner, 7 So.3d 972 (Miss.Ct.App. 2009). No further appeal was taken, and a mandate was issued on April 21, 2009.
¶ 5. In Milner, we stated the facts relevant to the instant case as follows:
The Milners were record owners of certain real property located in Pearl River County, Mississippi. On December 19, 2000, the Milners executed a Deed of Trust to Jim Walter Homes, Inc., securing the purchase price of the home built on their property. The Deed of Trust was recorded and subsequently assigned numerous times. The last assignment was to First Union National Bank.
The Milners failed to pay the 2002 ad valorem taxes on their property; thus, the property was sold to Wachovia Bank, for Magnolia Investors, LLC, in a tax sale on August 25, 2003. The chancery clerk sent notice to Robert Milner and to First Union National Bank via certified mail with return receipt. When no redemption was made on or before August 25, 2005, the property was finally sold by virtue of the chancery clerk’s conveyance to Magnolia Investors dated September 26, 2005.
Wachovia Bank, for Magnolia Investors, conveyed its interest in the property by a quitclaim deed to Rebuild America. ...
The chancellor considered the testimony and evidence presented at trial, and he held that ... the tax sale should be set aside for the chancery clerk’s failure to comply with the statutory notice requirements. ...
Id. at 974 (¶¶ 2-5). In affirming the chancellor’s judgment, we described the relevant statutory notice requirements for the tax sale, and we noted several deficiencies in the sale of the Milners’ property:
*1156 The chancellor found that the required statutory notice of the tax sale was not given because of (1) the chancery clerk’s failure to notify Patricia Mil-ner individually, (2) the chancery clerk’s failure to send the lien holder’s notice to the address shown on the recorded instrument, and (3) the lack of a sheriffs return on the notice. Rebuild America argues that the chancellor erred as a matter of law by voiding the tax sale.
Notice to property owners is governed by Mississippi Code Annotated section 27-43-3 (Supp.2008) which states:
The clerk shall issue the notice to the sheriff of the county of the reputed owner’s residence, if he be a resident of the State of Mississippi, and the sheriff shall be required to serve personal notice as summons issued from the courts are served, and make his return to the chancery clerk issuing same. The clerk shall also mail a copy of same to the reputed owner at his usual street address, if same can be ascertained after diligent search and inquiry, or to his post office address if only that can be ascertained, and he shall note such action on the tax sales record. The clerk shall also be required to publish the name and address of the reputed owner of the property and the legal description of such property in a public newspaper of the county in which the land is located, or if no newspaper is published as such, then in a newspaper having a general circulation in such county. Such publication shall be made at least forty-five (45) days prior to the expiration of the redemption period.
The failure of the landowner to actually receive the notice herein required shall not render the title void, provided the clerk and sheriff have complied with the duties herein prescribed for them.
Should the clerk inadvertently fail to send notice as prescribed in this section, then such sale shall be void and the clerk shall not be liable to the purchaser or owner upon refund of all purchase money paid.
Notice of the tax sale was sent to “MIL-NER, ROBERT K ETUX” via certified mail with return receipt. Robert Milner testified that he signed for the letter, but he never read the letter.
First, it is clear that the record does not contain the sheriffs return on the notice as required by section 27-43-3. Second, as the chancellor stated in his order, the supreme court has held that section 27-43-3 “contemplates that each owner shall receive the notice required by the statute.” [.Brown v. Riley, 580 So.2d 1234, 1237 (Miss.1991) ]. While the “et ux” following Robert Milner’s name translates to “and wife,” the record shows that Robert Milner, by signing for the certified letter, was the only owner to receive notice. Patricia Milner did not receive separate notice of the tax sale. Thus, just as in Brown, “[t]he notice was also fatally defective in attempting to serve both [Milners] with a single notice.” Id.
Third, the proper notice was not given to First Union National Bank, the lien holder of the property. Mississippi Code Annotated section 27-43-7 (Rev. 2006) requires that:
The notice shall be mailed to said lienors, if any, to the post-office address of the lienors, if such address is set forth in the instrument creating the lien, otherwise to the post-office address of said lienors, if actually known to the clerk, and if unknown to the clerk then addressed to the county site of the said county.
*1157 The original Deed of Trust executed by the Milners to Jim Walter Homes was subsequently assigned seven different times. The third, fifth, and seventh assignments were all assignments to First Union National Bank. The chancery clerk attempted to serve notice of the tax sale to First Union National Bank via certified mail. However, the chancery clerk mailed the notice to the address for First Union National Bank found in the third assignment. That address was in Charlotte, North Carolina.
Section 27-43-7 clearly states that the notice should be mailed to the address set forth in the instrument creating the lien. At the time notice was sent, the Deed of Trust had been assigned the seventh time to First Union National Bank with an address in Tampa, Florida. Under section 27-43-7, the notice should have been mailed to that address of the current lien holder.
As the supreme court held in Brown: the most important safeguard involving any person who stands to suffer from some official action is prior notice. This gives the recipient an opportunity to prepare himself and be heard. Notice, therefore, by far is the paramount factor and purpose of all process. This, however, is not the entire story. Certain statutory formalities attend every process....
Brown, 580 So.2d at 1237 (internal citations omitted). We must strictly construe the notice statutes in favor of the landowners. Id. Accordingly, we find that the chancellor did not err as a matter of law by voiding the tax sale as Patricia Milner did not receive separate notice and the notice to the lien holder was sent to the incorrect address.
Id. at 975-77 (¶¶ 13-19).
¶ 6. Rebuild America brought the instant suit against the chancery clerk, alleging that the statute created an “official duty” on the part of the chancery clerk, and that the failures detailed above amounted to a “breach of an official duty” that caused Rebuild America to suffer damages. Regarding the sheriff,[1] it alleged that he had “either failed to properly serve notice upon the Milners ... or failed to make his return .... ” Rebuild America alleged that section 27-43-3, which states in pertinent part that “the sheriff shall be required to serve personal notice as summons issued from the courts are served, and make his return to the chancery clerk issuing same,” imposed an official duty on the sheriff that had been breached, causing Rebuild America’s damages.
¶ 7. The trial court held a hearing on the defendants’ motions to dismiss on November 14, 2008. These motions were ultimately granted. In dismissing Rebuild America’s complaint for failure to state a claim, the trial court found that recovery was precluded under the doctrine of caveat emptor. It also found the suit barred by the statute of limitations and by Rebuild America’s failure to provide notice prior to filing suit under the Mississippi Tort Claims Act (MTCA), as required by Mississippi Code Annotated section 11-46-11(1) (Rev.2002). Aggrieved, Rebuild America appeals. The substance of its issues on appeal are its arguments that: (1) the trial court applied an incorrect legal standard; (2) Rebuild America is not pre- *1158 eluded from recovery by section 27-43-3’s provision limiting its remedy for a chancery clerk’s inadvertent failure to comply with the notice requirements; and (3) its claims are not subject to the MTCA.
STANDARD OF REVIEW
¶ 8. “A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of the complaint, and raises a question of law.” Favre Prop. Mgmt. v. Cinque Bam-bini, 863 So.2d 1037, 1042 (¶ 14) (Miss.Ct. App.2004). As a result, this Court reviews a 12(b)(6) dismissal de novo. Id. The allegations in the complaint must be taken as true, and the motion should not be granted unless it appears to a certainty that the plaintiff will be unable to prove any set of facts in support of the claim. Id.
DISCUSSION
1. Caveat Emptor
¶ 9. Because Rebuild America’s first two arguments on appeal address this ground of dismissal, we shall address them together.
¶ 10. The trial court held that Rebuild America’s claims against the sheriff and the chancery clerk were barred under the doctrine of caveat emptor. The court noted that Rebuild America was held to have constructive knowledge both of the risks inherent in purchasing property at a tax sale and of the defects existing in the tax title held by Wachovia Bank at the time it conveyed the property, by quitclaim deed, to Rebuild America. The trial court found that the legal or proximate cause of any damages suffered by Rebuild America must be regarded as its own decision to purchase the property notwithstanding this knowledge — whether actual or constructive. The trial court therefore held that no damages resulted from any alleged failure of the sheriff or chancery clerk in conducting the tax sale.
¶ 11. The trial court’s holding on this issue appears to be well supported in Mississippi law. In Everett v. Williamson, 163 Miss. 848, 854-55, 143 So. 690, 692 (1932), the supreme court held:
At a tax sale the bidders or purchasers of the land or property offered for sale are chargeable with notice and knowledge of the existing statutory requirements for a valid sale, and the statutory conditions upon which a valid deed may be acquired; and must be held to have purchased subject to such statutory provisions.
Likewise, in Parsons v. Marshall, 243 Miss. 719, 728-29, 139 So.2d 833, 837 (1962), the supreme court stated:
The textwriter in 51 Am.Jur., Taxation, Sec. 1135, p. 978, points out that “the purchaser at a tax sale buys strictly under the rule of caveat emptor. In the absence of any statutory provision to the contrary, there is no warranty on the part of the state, or other public body making the sale and if the purchaser’s title proves defective for want of compliance with the law in proceedings leading up to the sale or in the conduct of the sale, he has no affirmative remedy other than that which is provided by statute. If he fails to secure a good title to the property he attempts to purchase, because of the invalidity of the tax sale, he cannot recover the amount paid therefor, either from the taxing authorities or from the owner of the land, unless some statute in terms provides such remedy.”
The rule, as applied to public officers charged with executing the tax sale, was articulated in Foster v. Malberg, 119 Minn. 168, 137 N.W. 816, 819 (1912), one of the leading cases on the point:
[I]n the due application of the rule of caveat emptor to tax sales, the purchas *1159 er at such a sale must be deemed to know of the existence of every defect in the proceedings, and hence that if he purchases, and thus suffers loss because of the neglect of the officer to perform some ministerial duty, it must be considered that the proximate cause thereof was not the neglect or default of the officer, but the want of proper care and diligence on the part of the purchaser, and that the latter is without remedy, except as specifically provided by statute.
¶ 12. On appeal, Rebuild America offers no direct response to the trial court’s rationale in applying the doctrine of caveat emptor. Instead, it focuses its first argument on the provision of section 27-43-3 that states:
Should the clerk inadvertently fail to send notice as prescribed in this section, then such sale shall be void and the clerk shall not be liable to the purchaser or owner upon refund of all purchase money paid.
Rebuild America argues that the trial court erred in applying this statute, because it alleges that the chancery clerk’s failure was not inadvertent, but intentional or effectively intentional through recklessness or disregard of the statutory notice requirements. Rebuild America asserts that it would prove at trial that the chancery clerk and sheriff have repeatedly and systematically failed to comply with the statute’s notice requirements in executing tax sales.
¶ 13. It is apparent from our review of the record that the aforementioned provision was not the basis for the court’s decision; instead, it was the doctrine of caveat emptor, as we have described it above. The rule of law is that no remedy exists to the purchaser in an invalid tax sale unless a remedy is specifically created by statute. That section 27-43-3 creates an exception to liability — irrespective of whether that exception applies in this case — does not create liability in the absence of the exception. Nor does it change the fact that Rebuild America has failed to identify any statutory remedy allowing it to recover against the chancery clerk or sheriff. This argument is without merit.
¶ 14. In its second issue, Rebuild America argues that the trial court applied the wrong legal standard in granting the motions to dismiss. Rebuild America cites to the hearing on the motions to dismiss, where the trial judge stated: “The case against Johnson individually and as the clerk I’m going to allow to be dismissed. I’m not sure how I’m going to dismiss it.” It also cites to the following exchange between its attorney and the trial judge concerning the interpretation of the aforementioned provision of section 27-43-3:
[MR. COLEMAN]: ... The citation that you said, “inadvertently.” And that’s our point. This was not mere inadvertence. They know what they’re doing. They don’t know how to do a noticing. We have at least ten cases where they’ve done it incorrectly. They don’t know how to send separate notices to each of the landowners. They’re not doing it inadvertently, they’re doing it intentionally and in direct misfeasance in their office. There’s no way to hold them accountable unless you allow us to proceed on such — the lawsuit.
[THE COURT]: Mr. Coleman, take out the word “inadvertently” of the statute. “Should the clerk fail to send notices.” It’s still going to read the same.
[MR. COLEMAN]: But, Your Honor, I think “inadvertently” is the key word. And if you take it out, then yes. But inadvertently means a mistake or an accident or something that he just didn’t do because he knew he was supposed to *1160 but on this occasion he didn’t do it. He never does it.
[THE COURT]: You put more of a reading into that than I do.
Rebuild America asserts that these statements by the trial judge show that he “applied inconsistent and erroneous legal theories in order to achieve the intended result.”
¶ 15. We find this argument without merit. The first statement, that the trial judge was “not sure how [he was] going to dismiss [the claims against the clerk],” was made only after the trial judge had considered extensive briefing on the motions and had heard argument from both sides at the hearing. The trial judge’s statement that he was “not sure how” he would dismiss the claims appears to refer to the fact that numerous bases were asserted for dismissal, or to the fact that the trial judge had considered converting the motions to dismiss into motions for summary judgment as provided by Rule 12(b).[2]
¶ 16. It is unclear why Rebuild America asserts that the second quoted exchange is significant. The trial court quite correctly held that whether the alleged conduct was “inadvertent” is irrelevant to whether Rebuild America’s claims are precluded by the doctrine of caveat emptor, as we have held above. Instead, the relevant question is whether there is a statutory remedy against the chancery clerk or the sheriff, because recovery is otherwise barred by caveat emptor. Section 27-43-3 does not create one. These issues are without merit.
2. Statute of Limitations; MTCA
¶ 17. The remaining issues center around whether a cause of action, if it existed against the sheriff or chancery clerk, would fall under the MTCA. At issue is whether the claims are barred by the MTCA’s notice requirements or one-year statute of limitations. Because we have held that the trial court correctly found that no recovery can be had under these facts as alleged, we see no need to address the remaining issues which concern only alternative bases for affirming the trial court’s judgment.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIYER COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. BARNES, J., CONCURS IN RESULT ONLY. MAXWELL, J., NOT PARTICIPATING.

. At the hearing on the motion to dismiss, Rebuild America’s attorney acknowledged that the defendant, Allison, was not serving as the Sheriff of Pearl River County during the relevant times alleged in the complaint. Rebuild America nonetheless argued that its claim may still be advanced against Allison "in his official duty, or the sheriffs office ... against his bond.”

. Mississippi Rule of Civil Procedure 12(b) states, in pertinent part, that: “If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...."