BARNES, J.,
 

 for the Court:
 

 ¶ 1. Contessa Gray appeals the denial of her motion to set aside and amend order disbursing funds entered by the Chancery Court of Harrison County. Finding that the chancery court lacked jurisdiction to hear the motion, we affirm.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶2. This case arose from the death of Jessie Lee Williams, Jr. while in the custody of the Harrison County Sheriffs Department on February 4, 2006. Four days later, Terry Williams, the wrongful death representative for the Estate of Williams, contracted with attorney Michael W. Crosby to represent any wrongful-death beneficiaries in the wrongful death action.
 
 [1]
 
 The contract was also signed by Sandra Hall and Stacey Ratcliff, mothers to six of Williams’s illegitimate children. This contract stated that Crosby retained the discretion to associate and/or hire other attorneys that he deemed necessary at no additional expense or percentage to the client.
 

 ¶ 3. On March 14, 2006, Crosby and attorney John Whitfield filed a wrongful death action in the federal district court of the Southern District of Mississippi seeking to recover damages for the wrongful death of Williams. On March 21, 2006, attorney Bruce B. Smith advised Crosby that he was representing Gray, who was pregnant with Williams’s unborn child, later named Jyshawn Michael Gray, who was born on August 7, 2006. A motion was filed by Gray to establish paternity and for a DNA test. However, since Williams’s death was highly publicized, Crosby expressed concern to Smith about the adverse publicity that might be created by the discovery of another out-of-wedlock child fathered by Williams. Due to this concern about bad publicity and its possible effect on the potential settlement value of the case, the attorneys agreed that the best course of action for Gray would be to stay quiet and not actively participate in the suit. Therefore, Crosby handled all of the legal filings and publicity matters, and the birth of Jyshawn was not publicized during the court proceedings and media broadcasts.
 

 
 *1284
 
 ¶ 4. After the wrongful death action was settled, a hearing was held on August 22, 2007, to determine the wrongful death beneficiaries of Williams. Smith attended the hearing on Gray’s behalf. Following the hearing, the chancery court entered an order to determine the wrongful death beneficiaries and to conduct DNA tests. On September 5, 2007, the chancery court conducted a hearing to discuss the terms of the settlement and to review the results of the DNA tests. At the hearing, the chancellor approved the payment of the attorneys’ fees as provided in Crosby’s contract, along with expenses. The chancellor then entered an order establishing the wrongful death beneficiaries (including Jyshawn) and an order approving the partial settlement of the wrongful death action.
 

 115. On December 5, 2007, while reviewing the proposed petitions and orders to establish and fund Jyshawn’s guardianship accounts, Smith learned that Crosby and Whitfield were claiming all of the court-approved attorneys’ fees. According to Smith, until that point, he had been under the belief that he would receive one-seventh of the attorneys’ fees. Consequently, on December 7, 2007, Gray filed a motion to allocate and distribute attorneys’ fees which sought an award of attorney’s fees for Smith.
 
 [2]
 
 The chancery court denied Gray’s motion on December 13, 2007, finding that it was without jurisdiction to consider the motion as the matter constituted “a contractual dispute.” Smith, purportedly on Gray’s behalf, subsequently filed a motion to approve the contingency-fee contract she had entered into with Smith. She also filed a motion to set aside or amend the order disbursing funds on December 20, 2007. A hearing was held on March 3, 2008, on these motions. It was at this hearing that Smith first became aware of the chancellor’s previous order denying his motion to allocate and distribute the attorneys’ fees. On March 14, 2008, the chancery court denied Gray’s two remaining motions. Gray now appeals the denial of the motion to set aside or amend the order disbursing funds.
 

 STANDARD OF REVIEW
 

 ¶ 6. Our review of a chancellor’s findings of fact is limited.
 
 Rebuild America, Inc. v. Milner,
 
 7 So.3d 972, 974 (¶ 6) (Miss.Ct.App.2009). “We will not reverse the factual findings of the chancellor when supported by substantial evidence unless the Court can say that the findings are manifestly wrong, clearly erroneous, or amount to an abuse of discretion.”
 
 Id.
 
 (citing
 
 Morgan v. West,
 
 812 So.2d 987, 990 (¶ 7) (Miss.2002)). However, in questions of law, we employ a de novo standard of review “and will only reverse for an erroneous interpretation or application of the law.”
 
 Id.
 

 WHETHER THE CHANCERY COURT ERRED IN DENYING THE MOTION TO SET ASIDE OR AMEND THE ORDER DISBURSING FUNDS.
 

 ¶ 7. In his December 7, 2007 order, the chancellor stated that Gray’s claim constituted a breach of an oral contract between Crosby and Smith to share fees; therefore, the court was without jurisdiction to hear the motion. Smith, however, argues that he was entitled to a pro-rata portion of the attorneys’ fees awarded by the chancery court, and this was not a contract dispute between the attorneys.
 

 ¶ 8. As the chancellor denied Gray’s motion for lack of jurisdiction, we must address this issue before we may consider
 
 *1285
 
 the merits of Gray’s claim. As neither party discussed this issue in their briefs to this Court, additional briefing was requested. Smith asserts in his supplemental brief that as the case involved a “minor’s business,” i.e., the payment of attorneys’ fees from the minor’s share of a wrongful death ease, the chancellor had full authority and jurisdiction to decide the matter. The appellee, represented by Crosby, did not file any supplemental briefing with this Court.
 

 ¶ 9. This Court applies a de novo standard of review to the question of whether a chancery court has jurisdiction to hear a particular matter since it is a question of law.
 
 Shadden v. Shadden,
 
 11 So.3d 761, 762 (¶ 7) (Miss.Ct.App.2009) (citing
 
 In re Guardianship of Z.J.,
 
 804 So.2d 1009, 1011 (¶ 9) (Miss.2002)). The Mississippi Supreme Court has “consistently advised our trial courts that one must look at the substance, and not the form, of a claim to determine whether the claim is legal or equitable.”
 
 Copiah Med. Assoc, v. Miss. Baptist Health Sys.,
 
 898 So.2d 656, 661 (¶ 16) (Miss.2005) (citations omitted). Even in cases where there may be doubt “as to whether a complaint is legal or equitable in nature, the better practice is to try the case in circuit court.”
 
 Tyson Breeders, Inc. v. Harrison,
 
 940 So.2d 230, 233 (¶ 9) (Miss.2006) (citing
 
 S. Leisure Homes, Inc. v. Hardin,
 
 742 So.2d 1088, 1090 (¶ 6) (Miss.1999)). “[I]t is more appropriate for a circuit court to hear equity claims than it is for a chancery court to hear actions at law since circuit courts have general jurisdiction but chancery courts enjoy only limited jurisdiction[.]”
 
 Era Franchise Sys., Inc. v. Mathis,
 
 981 So.2d 1278, 1283 (¶ 13) (Miss.2006) (quoting
 
 United Nat’l Life Ins. Co. v. Crosby,
 
 870 So.2d 1175, 1182 (¶24) (Miss.2004)).
 

 ¶ 10. In
 
 Long v. McKinney,
 
 897 So.2d 160 (Miss.2004), the Mississippi Supreme Court clarified the procedure and manner in which to bring a wrongful death suit where multiple plaintiffs and attorneys are involved. “[A]ll claims for the wrongful death of a person [must] be litigated in the same suit and in the same court.”
 
 Id.
 
 at 172 (¶ 51). “[T]he first court to properly take jurisdiction of a wrongful death action in our state courts shall, so long as that action is pending, have exclusive jurisdiction, and any other subsequently-filed action for the same death shall be of no effect.”
 
 Id.
 
 at 173 (¶ 52). However, the supreme court rejected the proposition that the first to file a wrongful death suit “controlled] the litigation to the exclusion of participation by other heirs who wish to join with other counsel of their choosing.”
 
 Id.
 
 at 178 (¶ 76) (internal citations omitted).
 

 ¶ 11. In addition, the supreme court explained the role played by the chancery court in such cases. While a wrongful death suit may be brought in circuit court, “chancery jurisdiction should be invoked” in certain instances, such as wrongful death suits that: (1) are brought on behalf of the deceased’s estate, (2) involve a minor, “either as an heir, a wrongful death beneficiary, or both[,]” or (3) involve the determination of wrongful death beneficiaries.
 
 Id.
 
 at 174-76 (¶¶ 59-67). Here, the case was brought in chancery court, and the chancellor approved Crosby’s contract to represent the estate in the wrongful death suit. However, although “chancery approval is required for the appointment of the personal representative of the estate,” the supreme court observed that “[t]here is no general requirement under law that the personal representative obtain chancery approval to pursue the claims of the estate in litigation.”
 
 Id.
 
 at 174 (¶¶ 60-61). Nor does counsel representing the estate in the litigation have to obtain chancery approval for such representation.
 
 Id.
 
 
 *1286
 
 at (¶ 61). However, as the recovery of any funds by an estate in litigation “must be administered and distributed [through] the chancery court in the same manner as other assets of the estate, and counsel for the estate must be paid from estate proceeds or assets,” it is a wise practice to obtain such approval.
 
 Id.
 
 at 175 (¶¶ 61-62). This will “avoid difficulty when the chancellor is approached for an order approving the accountings and the final distribution of estate proceeds, where such payments include compensation to counsel.”
 
 Id.
 
 at 174-75 (¶ 61).
 

 ¶ 12. As to the issue of the allocation of attorneys’ fees, the supreme court in
 
 Long
 
 held that:
 

 [T]he personal representative or any beneficiary may petition the court for a review of the proposed payment of costs and distribution of attorney[s’] fees, and the trial court may equitably adjust and allocate fees among the attorneys based on the quantitative and qualitative contribution of each to the case, provided however, that so long as an attorney is reasonably involved, and makes a reasonable contribution to all aspects of the litigation, no deduction should be made from his or her fees.
 

 Id.
 
 at 176 (¶ 69). Smith contends that the Mississippi Supreme Court’s holdings in
 
 Long,
 
 and in
 
 Franklin v. Franklin ex rel. Phillips,
 
 858 So.2d 110 (Miss.2003), support his award of partial attorneys’ fees. In
 
 Franklin,
 
 Bill Waller, Sr., an attorney, filed a wrongful death action on behalf of his client. When another wrongful death beneficiary hired additional counsel, Paul Snow and Fred M. Harrell, Jr. (“Snow”), for legal representation, the court consolidated the actions and ordered all of the attorneys to serve as co-counsel.
 
 Id.
 
 at 112 (¶ 2). From that point forward, Waller minimally participated in the litigation, with Snow contributing the majority of the work.
 
 Id.
 
 at 116 (¶ 18). After the case was settled, Waller claimed that he was entitled to
 
 all
 
 of the attorneys’ fees as he was the counsel of record for the heirs.
 
 Id.
 
 at 113 (¶ 8) (emphasis added). The Mississippi Supreme Court found that both sets of attorneys were entitled to their attorneys’ fees based upon the contingency-fee contracts between counsel and their respective clients.
 

 ¶ 13. We find the facts in
 
 Franklin
 
 to be distinguishable from the present case as Waller participated in the filings and discovery. Smith did not participate in filing motions, discovery, or settlement negotiations. Smith merely made an appearance on behalf of Gray and never actively participated in the litigation. Smith counters that his inaction (i.e., not pursuing a DNA test, keeping Jyshawn’s birth out of the media) contributed to the case as it increased the settlement value, which ben-efitted all the parties. He argues that these contributions meet the requirements in
 
 Long,
 
 that an attorney be “reasonably involved” in the case. However, we do not find that the record reflects Smith met the further requirements in
 
 Long
 
 that he reasonably contribute to
 
 “all
 
 aspects of the litigation.” (Emphasis added).
 

 ¶ 14. Pertinent to the issue of jurisdiction here, the supreme court stated in
 
 Franklin
 
 that Waller’s failure to object and apparent acquiescence to the extensive amount of work performed by Snow implied that a contract existed between the attorneys.
 
 Franklin,
 
 858 So.2d at 121 (¶ 36). The supreme court held:
 

 When a party accepts and uses the services of an attorney knowing that compensation is expected, a contract will be implied for the payment of attorneys fees. A contract that arises from the conduct of the parties, also known as a contract implied in fact, has the same legal effect as an express contract. It
 
 *1287
 
 carries as much weight as, and is as binding as[,] an express contract.
 

 Id.
 
 at 120 (¶ 34) (internal citations omitted). “A contract implied in fact is an obligation arising from a mutual agreement and intent to promise, but where the agreement and promise have not been fully expressed in words.”
 
 Kaiser Invs., Inc. v. Linn Agriprises, Inc.,
 
 538 So.2d 409, 413 (Miss.1989) (citing
 
 Cooke v. Adams,
 
 183 So.2d 925, 927 (Miss.1966)). Although no express agreement existed between Smith and Crosby regarding attorneys’ fees, Smith accepted and used Crosby’s services as an attorney to obtain a settlement for his client. Moreover, Smith was present at the hearing to establish the wrongful death beneficiaries on September 5, 2007; yet, he never asserted any right to the attorneys’ fees even though the chancellor plainly discussed the issue of attorneys’ fees with Crosby at that hearing, as follows:
 

 THE COURT: And, also I think — the Court has previously approved your fee, which is, what 40 percent?
 

 MR. CROSBY: Yes, sir.
 

 [[Image here]]
 

 THE COURT: All right. We need to approve your fee today, so we need something on that. I’m going to ask Mr. Williams if he has any objections to it. I’ll also ask Mr. Smith.
 

 Smith neither made any comment nor entered any objection to the approval of attorneys’ fees at the hearing. “[A]ny conduct of one party from which the other party may draw the inference of a promise is effective as such and the conduct of the parties is viewed as a reasonable man would to determine the existence or not of the contract implied in fact.”
 
 Franklin,
 
 858 So.2d at 121 (¶ 35). Smith’s acquiescence strongly suggests an expectation by Smith that his portion of the attorneys’ fees would be obtained from Crosby through an implied contract, not through the settlement of the estate. Thus, we find no merit to Smith’s contention that the chancery court should have jurisdiction as the claim involved a minor’s business.
 
 Compare McLean v. Green,
 
 352 So.2d 1312, 1314 (Miss.1977) (the chancellor did not have jurisdiction over claim even though “both complainants were minors, [as] th[e] case neither involved nor required any equitable relief’).
 

 ¶ 15. Additionally, the chancellor stated at the hearing on the motion to set aside and amend the order that approving Smith’s contingency-fee contract would, in essence, obligate Gray to pay attorneys’ fees twice.
 

 THE COURT: But I cannot obligate a fiduciary — or approve this — your request to approve your contingency fee contract where I’ve already approved it in a like amount, that somebody would be bearing this expense, again, potentially.
 

 [[Image here]]
 

 That’s the reason — part of the reason I view your claim now as one against Mr. Crosby, based on what you told me your agreement with him was.
 

 Consequently, the chancellor found that Smith’s claim was “one of law against Mr. Crosby,” making the claim more appropriate for consideration by the circuit court. “[Bjreaeh of contract issues are best heard in circuit court.”
 
 Tyson Breeders, Inc.,
 
 940 So.2d at 233 (¶ 9) (citing
 
 S. Leisure Homes, Inc.,
 
 742 So.2d at 1090 (¶ 6)).
 
 [3]
 

 
 *1288
 
 ¶ 16. Although not addressed by either party, this Court has also reviewed the chancellor’s decision to dismiss the motion, rather than transfer it to the circuit court under Article 6, Section 162 of the Mississippi Constitution. That section mandates that “[a]ll causes that may be brought in the chancery court whereof the circuit coui't has exclusive jurisdiction shall be transferred to the circuit court.” Miss. Const, art. 6, § 162. The supreme court has repeatedly held that in cases where it is apparent that the circuit court has exclusive jurisdiction, it is manifest error for the chancery court to dismiss, rather than transfer a case to circuit court.
 
 See, e.g., Benedict v. City of Hattiesburg,
 
 693 So.2d 377, 382 (Miss.1997);
 
 West v. Meeh. Servs., Inc.,
 
 216 So.2d 174, 176 (Miss.1968);
 
 Murphy v. City of Meridian,
 
 103 Miss. 110, 60 So. 48 (1912). However, we do not see that section 162 is applicable to the unique circumstances of this appeal. Section 162 speaks in terms of transferring “causes.” Rules 2 and 3 of the Mississippi Rules of Civil Procedure state that only one form of action is recognized, a “civil action,” which is commenced by the filing of a complaint. Here, the matter on appeal was not brought by complaint, but merely by a motion contested among the attorneys of the minor parties in the underlying action. Consequently, due to the manner in which this matter was presented to the chancery court, we find that it would have been inappropriate procedurally for the chancellor to transfer the issue of attorneys’ fees to the circuit court. We agree with the chancellor’s conclusions and affirm his denial of the motion based upon lack of jurisdiction. This decision is without prejudice to the filing of any subsequent action(s) in the circuit court.
 

 ¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS
 

 OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ, CONCUR. CARLTON, J., NOT PARTICIPATING.
 

 [1]
 

 . The contingency-fee contract provided in part that Crosby would receive, in legal fees, forty percent of the gross amount recovered up to and through the filing of a complaint.
 

 [2]
 

 . The amount requested was forty percent of Jyshawn's settlement in accordance with the employment contract between Gray and Smith.
 

 [3]
 

 . To the extent that the chancellor's decision to deny the motion was not based upon jurisdiction but upon whether to re-open the matter for consideration, we do not find that it was an abuse of discretion.
 
 See Wakefield v. Puckett,
 
 584 So.2d 1266, 1268-69 (Miss.1991) (a court's decision to re-open a case is viewed under an abuse-of-discretion standard).