# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CT-00433-SCT

*IN THE MATTER OF THE ESTATE OF LESTER*
*RANDLE, DECEASED: TUMIKA RANDLE*
*WEBBER AND SYLVESTER RANDLE*

*v.*

*DOROTHY MEEKS RANDLE*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 01/24/2020 |
| TRIAL JUDGE: | HON. WATOSA MARSHALL SANDERS |
| TRIAL COURT ATTORNEYS: | JAMES KEVIN LITTLETON, III |
| | CARLOS DIALLO PALMER |
| | MARGARETTE LAFAYE MEEKS |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | CARLOS DIALLO PALMER |
| | TANGALA LANIECE HOLLIS |
| ATTORNEY FOR APPELLEE: | MARGARETTE LAFAYE MEEKS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 08/18/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     This Court granted certiorari under Mississippi Rule of Appellate Procedure 17 to resolve a "substantial question of law of general significance" and to consider "fundamental issues of broad public importance." There are two issues to address. First, the chancery court and the Court of Appeals incorrectly considered the settlement proceeds from a wrongful-death claim as an asset of the estate. Second, the chancery court and the Court of

Appeals incorrectly considered the petition to determine heirs under Mississippi Code Sections 91-1-1 to -31 (Rev. 2021) instead of a determination of wrongful-death beneficiaries under Mississippi Code Section 11-7-13 (Rev. 2019). We reverse the judgments of the Court of Appeals and the Leflore County Chancery Court and remand this case to the chancery court to determine the wrongful-death beneficiaries of Lester Randle under Section 11-7-13.

¶2. In *Randle v. Randle*, No. 2020-CT-00433-COA, 2021 WL 4972443 (Miss. Ct. App. 2021), the Court of Appeals affirmed the chancellor's adjudication that Dorothy and Raymond Randle were Lester Randle's only heirs at law. The majority opinion set forth the facts:

> Lester died on July 14, 2009, and was survived by Dorothy, his wife of twenty-one years, and their son, Raymond Randle. Lester had previously been married to Ruthie Randle. Two children were born of that marriage: Tumika and Sylvester, the Appellants. Ruthie and Lester divorced in 1977 when the children were very young.
>
> Lester died intestate. On May 7, 2018, Dorothy filed a petition for grant of letters of administration in which she noted that Lester's "estate consist[ed] of no real property but ha[d] a potential claim for unliquidated damages arising out of" Lester's death. The petition acknowledged the Appellants, as well as Dorothy and Raymond, as Lester's heirs at law. Dorothy was appointed administrator on July 12, 2018.
>
> On November 19, 2018, Dorothy filed a petition for a determination of heirship, now asserting that the estate consisted of a claim for benefits against the manufacturer of Granuflow/Natural Lyte in the amount of $67,500.25 arising from Lester's use of the prescription drug. The petition further claimed that the Appellants were "*not* heirs at law of Lester Randle and [were] not entitled to any of the settlement proceeds," but rather they "were born to a married man, putative father," and Ruthie. (Emphasis added). A summons by publication was submitted in the newspaper, *The Greenwood Commonwealth*, to any unknown heirs.

2

At a hearing before the chancery court on April 11, 2019, Cederica Gilliam appeared, claiming to be Lester's heir; so the court continued the proceedings and ordered Lester's putative children—Sylvester, Tumika, Cederica, and Raymond—to undergo DNA testing. A second hearing was held on January 13, 2020. The testifying witnesses were Brandi Jones (owner of Capital DNA), Dorothy, Cederica, and Cederica's brother Antonio Gilliam.

Jones presented the DNA results, which revealed that there was a 98.74% probability that Raymond and Cederica were half-siblings. There was a 99.69% probability that Tumika and Sylvester were "full siblings." However, the probability that Raymond and Tumika were unrelated was 93.51%. Between Raymond and Sylvester, the report indicated that the "state of the relationship is inconclusive because the probabilities of each are less than 91%." It was further determined there was more than a 99% probability that Cederica and Tumika (99.94%)/Sylvester (99.45%) were unrelated. Thus, Jones testified that based on the reports, "only one individual is a half sibling of Raymond Randle. That is [Cederica]." She also testified that the results showed the Appellants were full siblings, which meant they had "the same mother and the same father." The parties stipulated to the DNA results being entered into evidence.

In her testimony, Dorothy acknowledged that Lester was listed as the father on the Appellants' birth certificates and that he had been ordered to pay their child support. Dorothy also said, however, that she was "aware of Lester seeking out legal help to look into whether the children were his because he did question it. But at the time they told him it was no good because he was married to [Ruthie]." Dorothy admitted that Lester never instituted any legal proceedings to challenge paternity of the Appellants.

Both Cederica and his brother Antonio testified that their mother had informed them Lester was Cederica's father. Cederica admitted that there was no one listed as his father on his birth certificate, but he stated that Lester would "randomly" stop by and ask him if he needed anything. Cederica would also stop and talk with Lester if he saw him outside on his porch. Cederica assumed Dorothy knew about him, "but eventually [sic] she didn't."

On January 24, 2020, the chancery court entered its final order. The court determined Cederica was Lester's biological child and Raymond's half-sibling, but his claim was statutorily time-barred under Mississippi Code Annotated section 91-1-15(3) (Rev. 2018). The chancery court further

3

concluded that the Appellants were not Lester's legal heirs at law based on the cross-referencing of the DNA results. Accordingly, the court adjudged Dorothy and Raymond as Lester's only heirs at law and awarded them equal shares in any distribution of property. The court also ordered that the Appellants could, at their own expense, exhume Lester's body for DNA testing within thirty days from January 13, 2020, if they wished to do so.

The Appellants filed a motion for finding of facts and law under Rule 52 of the Mississippi Rules of Civil Procedure. They also filed a motion for a new trial, amendment of judgment, or relief from the judgment or order. In the motion, they alleged that because Lester had never disestablished their paternity or terminated his child-support obligation, he "remained the legal father of Tumika Randle Webber and Sylvester Randle[.]" The Appellants further asserted that the chancery court's allowing them to exhume Lester's body for DNA testing at their expense was "not equitable under the circumstances[,] . . . contrary to the present status of the law," and improperly shifted the burden of establishing paternity to them. On March 31, 2020, the chancery court denied the motion for a new trial or to amend the judgment, finding the Appellants had failed to establish any basis for relief under either Rule 59 or Rule 60 of the Mississippi Rules of Civil Procedure.

The court subsequently filed an order to approve the distribution of assets and to close the estate on April 17, 2020. The Appellants filed a motion to set aside that order. The following day, they also filed a notice of appeal and a motion to stay the execution of the order. The Appellants later withdrew the motion to stay at a May 1, 2020 motions hearing; so the chancery court dismissed that motion and ordered both Appellants to post a $5,000 supersedeas bond pending the appeal.

*Id.* at *1-*3 (footnotes omitted).

I.     *Damages from a wrongful-death claim are not an asset of the decedent's estate.*

¶3.     The first issue is whether the $67,500.25 settlement proceeds from a wrongful-death

lawsuit, filed by Dorothy on behalf of Lester after Lester's death, are an asset of the estate.

The chancery court and the Court of Appeals stated that the wrongful-death proceeds were

4

an asset of the estate. They are not.

¶4.    The chancellor said that the $67,500.25 was "money that [Dorothy] pursued in this wrongful death case." Damages recovered in a wrongful-death action are the property of the statutory wrongful-death beneficiaries. Miss. Code Ann. § 11-7-13.

¶5.    In *Long v. McKinney*, 897 So. 2d 160, 169 (Miss. 2004), this Court held that a wrongful-death claim is not part of the decedent's estate. The Court ruled that "the estate is entitled to recover funeral costs and final medical expenses. . . . The wrongful death beneficiaries are entitled to recover the present net cash value of the decedent's continued existence." *Id.*; s*ee also Franklin v. Franklin ex rel. Phillips*, 858 So. 2d 110, 115 (Miss. 2003) ("The wrongful death action is not part of the estate of the deceased." (citing *Partyka v. Yazoo Dev. Corp.*, 376 So. 2d 646, 650 (Miss. 1979))). This Court has clearly stated that the chancery court's involvement in a wrongful-death claim is limited. *Id.* Further, in *Huber v. Eubanks (In re Estate of Eubanks)*, 197 So. 3d 861, 865-66 (Miss. 2015), this Court ruled:

> This Court was crystal clear in *Long v. McKinney* that the chancery court's jurisdiction in wrongful-death litigation may be invoked in only three instances: (1) for opening the decedent's estate so that beneficiaries may pursue a wrongful-death claim in the circuit court; (2) for the approval or rejection of a minor's wrongful-death settlement; and (3) to determine wrongful-death beneficiaries.

¶6.    Here, the chancery court's only role was to determine the wrongful-death beneficiaries under the wrongful-death statute, Section 11-7-13. The chancellor and the Court of Appeals were incorrect to consider the wrongful-death proceeds as an asset of Lester's estate.

5

*II.     The chancellor may determine the wrongful-death beneficiaries.*

¶7.     In the estate, Dorothy filed a petition for a determination of heirship.  Dorothy challenged whether Tumika, Sylvester, or Cederica were Lester's heirs.  After a hearing, the chancellor entered a judgment that held (1) Cederica was Lester's biological child, but his claim was statutorily time-barred under Mississippi Code Section 91-1-15(3) (Rev. 2021), and (2) Tumika and Sylvester were not Lester's biological children and thus were not Lester's legal heirs-at-law.  Thus, the chancellor held that Dorothy and Raymond were Lester's only heirs-at-law and awarded them equal shares of the wrongful-death proceeds.

¶8.     As discussed above, the chancery court's jurisdiction in wrongful-death litigation may be invoked to determine wrongful-death beneficiaries.  ***Eubanks***, 197 So. 3d at 866; ***Long***, 897 So. 2d at 175.  The chancellor did not determine the wrongful-death beneficiaries.  Instead, as part of the probate of Lester's estate, the chancellor adjudicated Lester's heirs-at-law under the Mississippi statutes on descent or distribution.  *See* Miss. Code Ann. §§ 91-1-1 to -31.  The chancellor then ordered the disbursement of the wrongful-death proceeds to the heirs-at-law, instead of the wrongful-death beneficiaries.  This was error.

¶9.     There are similarities in the Mississippi statutes that govern the determination of a decedent's heirs-at-law and the determination of a decedent's wrongful-death beneficiaries.  But these statutes are not identical and do not always command the same result.  These differences are important, and the courts must follow the statutory language approved by the Legislature and codified as Mississippi law.

6

¶10.    The Mississippi Wrongful-Death Statute, Mississippi Code Section 11-7-13, provides

in relevant part:

> In an action brought pursuant to the provisions of this section by the widow, . . . child . . . of the deceased . . . , or by all interested parties, such party or parties may recover as damages property damages and funeral, medical or other related expenses incurred by or for the deceased as a result of such wrongful or negligent act or omission or breach of warranty, whether an estate has been opened or not. Any amount, but only such an amount, as may be recovered for property damage, funeral, medical or other related expenses shall be subject only to the payment of the debts or liabilities of the deceased for property damages, funeral, medical or other related expenses. All other damages recovered under the provisions of this section shall not be subject to the payment of the debts or liabilities of the deceased, except as hereinafter provided, and such damages shall be distributed as follows:
>
> Damages for the injury and death of a married man shall be equally distributed to his wife and children . . . . There shall not be, in any case, a distinction between the kindred of the whole and half blood of equal degree. . . . The provisions of this section shall apply to illegitimate children on account of the death of the natural father and to the natural father on account of the death of the illegitimate child or children, and they shall have all the benefits, rights and remedies conferred by this section on legitimates, if the survivor has or establishes the right to inherit from the deceased under Section 91-1-15.
>
> . . . .
>
> The list of persons in this section who may bring a wrongful death action is exclusive and only those persons shall be considered interested parties who are entitled to bring an action under this section.

Miss. Code Ann. § 11-7-13 (Rev. 2019).

¶11.    Mississippi law on descent and distribution, Mississippi Code Section 91-1-7,

provides:

> If a husband die intestate and do not leave children or descendants of

children, his widow shall be entitled to his entire estate, real and personal, in fee simple, after payment of his debts; but where the deceased husband shall leave a child or children by that or a former marriage, or descendants of such child or children, his widow shall have a child's part of his estate, in either case in fee simple.

Miss. Code Ann. § 91-1-7 (Rev. 2021). Then, Section 91-1-15 provides for "Descent among illegitimates":

(1) The following terms shall have the meaning s ascribed to them herein:

. . . .

(c) "Illegitimate" means a person who at the time of his birth was born to natural parents not married to each other and said person was not legitimized by subsequent marriage of said parents or legitimized through a proper judicial proceeding.

(d) "Natural parents" means the biological mother or father of the illegitimate.

. . . .

(3) An illegitimate shall inherit from and through the illegitimate's natural father and his kindred, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution if:

(a) The natural parents participated in a marriage ceremony before the birth of the child, even though the marriage was subsequently declared null and void or dissolved by a court; or

(b) There has been an adjudication of paternity or legitimacy before the death of the intestate; or

(c) There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under Sections 91-1-27 and 91-1-29. However, no such claim of inheritance shall be recognized

8

unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less; and such time period shall run notwithstanding the minority of a child. This one-year limitation shall be self-executing and may not be tolled for any reason, including lack of notice. If an administrator is appointed for the estate of the intestate and notice to creditors is given, then the limitation period shall be reduced to ninety (90) days after the first publication of notice, if less than one (1) year from the date of the intestate's death; provided actual, written notice is given to all potential illegitimate heirs who could be located with reasonable diligence. . . .

. . . .

The remedy created herein is separate, complete and distinct, but cumulative with the remedies afforded illegitimates as provided by the Mississippi Uniform Law on Paternity; provided, however, the failure of an illegitimate to seek or obtain relief under the Mississippi Uniform Law on Paternity shall not diminish or abate the remedy created herein.

Miss. Code Ann. § 91-1-15 (Rev. 2021).

¶12.    Lester was Cederica's natural and biological father. But Cederica was an illegitimate child. Indeed, at the time of his birth, Cederica "was born to natural parents not married to each other and said person was not legitimized by subsequent marriage of said parents or legitimized through a proper judicial proceeding." Miss. Code Ann. § 91-1-15(1)(c). Section 11-7-13 does not define "illegitimate" child. But it is clear that Cederica's claim as a wrongful-death beneficiary was based on his being an illegitimate child of Lester. However, Cederica did not appeal the chancellor's judgment. Therefore, Cederica's status as a wrongful-death beneficiary under Section 11-7-13 is not properly before this Court.

9

¶13. Tumika and Sylvester have appealed the chancellor's ruling that they are not Lester's heirs. The chancellor was in error to consider the petition to determine heirs under Sections 91-1-1 to -31. Instead, the chancellor should have conducted a determination of wrongful-death beneficiaries under Section 11-7-13. *Long*, 897 So. 2d at 169; *Franklin*, 858 So. 2d at 115 (citing *Partyka*, 376 So. 2d at 650).

¶14. Section 11-7-13 clearly indicates that there is a important distinction between "legitimate" and "illegitimate" children. The evidence in this case established that Tumika and Sylvester were born during Lester's marriage to Ruthie. Thus, Tumika and Sylvester were Lester's legitimate children because they were born during the marriage of Lester and Ruthie. Also, Lester did not file any action during his lifetime to change this status or his paternity.

¶15. Unlike Section 91-1-15, the wrongful-death statute, Section 11-7-13, does not include a procedure to adjudicate "legitimate" children as "illegitimate" children. While Section 91-1-15 may allow Dorothy, Lester's wife at his death, to contest the paternity of Tumika and Sylvester and their status as Lester's heirs-at-law, Section 11-7-13 does not appear to allow Dorothy to contest their status as Lester's legitimate children after Lester's death. Rather than simply use the evidence offered in a hearing on the determination of heirs, under Section 91-1-1 to -31, we have determined the better course is to remand this case to the chancellor for a hearing to determine wrongful-death beneficiaries under Section 11-7-13. At the hearing, the parties may make any arguments or present any evidence necessary to establish

Lester's wrongful-death beneficiaries.

¶16.    We reverse the decision of the Court of Appeals and the judgment of the chancery court.  We remand this case to the Leflore County Chancery Court for further proceedings to determine Lester's wrongful-death beneficiaries under Section 11-7-13.

¶17.    **REVERSED AND REMANDED.**

    **RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR**.